**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ROBERT LEMATTA, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>Casper SLEEP INC., PHILIP KRIM, GREGORY MACFARLANE, NEIL PARIKH, DIANE IRVINE, ANTHONY FLORENCE, JACK LAZAR, BENJAMIN LERER, KAREN KATZ, DANI REISS, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, JEFFERIES LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., PIPER SANDLER & CO. and GUGGENHEIM SECURITIES, LLC,<br><br>        Defendants. | Case No.: 1:20-cv-02744-MKB<br><br>Hon. Margo K. Brodie |

**MEMORANDUM OF LAW IN SUPPORT OF CRAIG S. ALBERT'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF <u>SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.     FACTUAL BACKGROUND ................................................................................2

II.    PROCEDURAL HISTORY.................................................................................5

III.   ARGUMENT .....................................................................................................6

    A.    Appointing Movant as Lead Plaintiff Is Appropriate .......................................6

       1.   Movant Filed a Timely Motion.................................................................7

       2.   Movant Has the Largest Financial Interest in the Relief Sought. .............7

       3.   Movant Satisfies the Relevant Requirements of Rule 23.........................8

          a.   Movant's Claims Are Typical............................................................9

          b.   Movant Is an Adequate Representative...............................................9

    B.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate.....................10

IV.   CONCLUSION .................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Top Ships Inc.,*
324 F. Supp. 3d 335 (E.D.N.Y. 2018)..............................................................................7, 8

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
269 F.R.D. 291 (S.D.N.Y. 2010) ........................................................................................10

*Deinnocentis v. Dropbox, Inc.,*
No. 19-cv-06348-BLF, 2020 U.S. Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020)...................10

*Ford v. VOXX Int'l Corp.,*
No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015)...............9

*Francisco v. Abengoa, S.A.,*
No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ..................11

*In re Cendant Corp.,*
264 F.3d 201 (3d Cir. 2001) ................................................................................................10

*In re Gentiva Sec. Litig.,*
281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................9

*In re Sundial Growers Inc. Sec. Litig.,*
No. 1:19-cv-08913-ALC (S.D.N.Y. Dec. 20, 2019) ............................................................11

*In re Tesla, Inc. Sec. Litig.,*
No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018) ...........11

*Isaacs v. Musk,*
No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018),..........11

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
No. 1:08-cv-7281-JFK, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008)...................................9

*Levin v. Res. Capital Corp.,*
No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377 (S.D.N.Y. Oct. 5, 2016) ................11

*Pope v. Navient Corp.,*
No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340 (D.N.J. Feb. 2, 2018) ...........11

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,*
No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011)...................9

*Xiangdong Chen v. X Fin.,*
No. 19-CV-6908-KAM-SJB, 2020 U.S. Dist. LEXIS 86292 (E.D.N.Y. May 13, 2020) .........7

*Zhang v. Valaris PLC, et al.,*
    No. 1:19-cv-07816-NRB (S.D.N.Y. Dec. 23, 2019) ............................................................11

**Statutes**

15 U.S.C. § 77z-1(a)(3)(A)(i) ............................................................................................7

15 U.S.C. § 77z-1(a)(3)(B) ...............................................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii) ......................................................................................6, 8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(aa) ...................................................................................7

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) ...............................................................................8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ....................................................................................6

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa) ............................................................................10

15 U.S.C. § 77z-1(a)(3)(B)(v) .........................................................................................10

**Rules**

FED. R. CIV. P. 23 ................................................................................................... 1, 7, 8, 9

Craig S. Albert ("Movant") respectfully submits this memorandum of law in support of his motion ("Motion") to appoint him as lead plaintiff and approve his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to Section 27 of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of all persons who purchased or otherwise acquired Casper Sleep Inc. ("Casper" or the "Company") securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with Casper's February 7, 2020 initial public offering (the "IPO" or "Offering") (the "Class"), against Defendants Casper, Philip Krim, Gregory Macfarlane, Neil Parikh, Diane Irvine, Anthony Florence, Jack Lazar, Benjamin Lerer, Karen Katz, Dani Reiss, and the Underwriter Defendants[1] (collectively "Defendants").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that he is the "most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on the substantial financial losses he suffered as a result of defendants' wrongful conduct as alleged in this litigation. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims and he will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial experience in

---

[1] The Underwriter Defendants are Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Jefferies LLC, BofA Securities, Inc., UBS Securities LLC, Citigroup Global Markets Inc., Piper Sandler & Co., and Guggenheim Securities, LLC.

securities class action litigation and the experience and resources to efficiently prosecute this Action.

## I.     FACTUAL BACKGROUND[2]

Casper purports to sell mattresses, sleep aids and other sleep-related products and services. ¶7. Since its founding in 2014, Casper has shown tremendous growth. ¶27. However, in the lead-up to the IPO, Casper claimed to have significantly improved its profit margins, placing it on a path to profitability. ¶28.

In addition, Casper maintained that its core operations were profitable. For example, the Company represented that as of September 30, 2019, its existing stores that had been operating for one year or longer were "all four-wall profitable," which it defined as gross profit, less operating expenses (excluding one-time costs and non-allocable expenses). The Company claimed that its growing e-commerce operations were likewise profitable, stating that from 2017 through September 30, 2019 it had maintained "'first purchase profitable'" e-commerce economics, defined as gross profit dollars, less marketing dollars over the time period. *Id.*

As of December 31, 2018, Casper had $26.9 million in cash and cash equivalents on hand. During that same year, the Company had a negative net cash flow of $53.3 million, requiring it to raise capital through financing activities in 2019. ¶29. Moreover, the Company took on a substantial amount of debt in the lead-up to the IPO. As of September 30, 2019, the Company had over $40 million in senior secured and subordinate debt, as well as a substantial amount of preferred stock outstanding. As a result, it was of the utmost importance to investors that: (1)

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Lematta* Complaint") filed in the action styled *Lematta v. Casper Sleep Inc.,* Case No. 1:20-cv-02744-MKB (the "*Lematta* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Lematta* Complaint. The facts set forth in the *Lematta* Complaint are incorporated herein by reference.

Casper's mature and stable retail store and e-commerce operations were, in fact, profitable; (2) the Company's margins were, in fact, improving; and (3) the Company was, in fact, on a sustained path to profitability. *Id.*

On January 10, 2020, the Company filed its Registration Statement on Form S-l for the IPO, which, after several amendments, was declared effective by the SEC on February 5, 2020 (the "Registration Statement"). On February 7, 2020, Casper filed its Prospectus on Form 424B4 with the SEC. In the IPO, defendants sold 8.35 million shares of Casper common stock at $12 per share, generating over $100 million in gross proceeds. ¶30.

The Registration Statement highlighted the Company's purported core profitability (¶32); stated that Casper's retail stores were generating increasing amounts of cash and, based on observable trends, expected to cover the costs of new store builds over an 18- to 24-month period as the Company continued expanding retail locations (¶33); represented that Casper's e-commerce operations were profitable and experiencing increased average order value ("AOV") in the lead-up to the IPO (¶34); stated that the Company's multi-channel marketing and new retail store strategy had offered complementary revenue growth and "'first purchase profitable' e-commerce economics" (¶35); represented that Casper had implemented a number of strategic initiatives designed to improve the Company's margins (¶36); provided preliminary results for the year ended December 31, 2019, which indicated that favorable year-over-year revenue and margin trends were sustainable and continuing (¶37); highlighted the Company's continued growth strategy, which purportedly had set the stage for higher profit margins as a result of its past investment activities (¶38); and emphasized Casper's global operations and claimed that it was poised to expand into several new international markets (¶39).

Throughout the Registration Statement, Defendants issued statements that were inaccurate

3

of material fact because they failed to disclose the following adverse facts that existed at the time of the IPO: (a) that Casper's profit margins were actually declining, rather than growing; (b) that Casper was changing an important distribution partner, costing it 130 basis points of gross margin in the first quarter of 2020 alone; (c) that Casper was holding a glut of old and outdated mattress inventory that it was selling at steeply discounted clearance prices, further impairing the Company's profitability; (d) that Casper was suffering accelerating losses, further placing its ability to achieve positive cash flows and profitability out of reach; (e) that Casper's core operations were not profitable, but were causing the Company to suffer over $40 million in negative cash flows during the first quarter of 2020 alone and doubling its quarterly net loss year over year; (f) that, as a result of (a)-(e) above, Casper's ability to achieve profitability, implement its growth initiatives, and expand internationally had been misrepresented in the Registration Statement, as the Company needed to shutter its European operations, halt all international expansion, jettison over one fifth of its global corporate workforce, and significantly curtail new store openings in order to avoid an imminent cash and liquidity crisis, let alone achieve positive operating cash flows; and (g) that, as a result of (a)-(f), Casper's revenue growth rate was not sustainable and had not positioned the Company to achieve profitability. ¶41.

Shortly after the IPO, Casper announced downward gross margin trends and substantially impaired operations as a result of an increasingly dire cash flow situation. ¶45. Then, on April 21, 2020, Casper announced that it was taking significant actions to improve its cash position and business model, notwithstanding the fact that the Company had raised more than $100 million in gross offering proceeds from the IPO less than three months previously. ¶46.

On May 12, 2020, Casper issued a release providing its financial results for the quarter ended March 31, 2020 – the same quarter during which defendants conducted the IPO. The

4

Company stated that it had suffered a net loss of $34.5 million, a 98% increase year over year, and an adjusted EBITDA loss of $22.9 million, a 60% increase year over year. In addition, the Company stated that its gross margin had actually fallen during the quarter by 190 basis points. ¶47.

On an earnings call to discuss Casper's first quarter 2020 results, defendant Krim stated that the decrease in net margin was due to a change in one of Casper's logistics providers and an abnormally high number of clearance sales needed to get rid of old mattress inventory that had built up prior to the IPO. ¶48.

Also on May 12, 2020, Casper filed its quarterly report on Form 10-Q in which it stated that its cash and cash equivalents had only increased $48.5 million during the quarter, despite the fact that the Company received over $88 million in net cash proceeds from the IPO. ¶49.

As of market close on June 4, 2020, Casper stock was trading at just $8.18 per share, 32% below the IPO price. ¶50.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## II.     PROCEDURAL HISTORY

Pending before this Court is the above-captioned *Lematta* Action against the Defendants. Plaintiff Robert Lematta ("Lematta") commenced the first-filed action on June 19, 2020. On June 19, 2020, counsel acting on Lematta's behalf published a notice on *Business Wire* announcing that a securities class action had been initiated against the Defendants. *See* Exhibit C ("Press Release") to the Declaration of Shannon L. Hopkins in Support of Movant's Motion ("Hopkins Decl.").

### III.    ARGUMENT

#### A.    Appointing Movant as Lead Plaintiff Is Appropriate

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 77z-1(a)(3)(B) The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of his knowledge, the largest financial interest in this litigation—having lost $3,220 as a result of his transactions and

6

meets the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Hopkins Decl. In addition, Movant is not aware of any unique defenses that Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed as lead plaintiff. *See Brady v. Top Ships Inc.,* 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018).

### 1.     Movant Filed a Timely Motion.

On June 19, 2020, pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i), counsel for Lematta published the Press Release on *Business Wire*—a widely circulated national business-oriented wire service— announcing that a securities class action had been filed against defendants herein and advising purchasers of Casper securities that they had 60 days from the publication of the June 19, 2020 notice to file a motion to be appointed as lead plaintiff. *See* Press Release, Ex. C to Hopkins Decl.; *Xiangdong Chen v. X Fin.,* No. 19-CV-6908-KAM-SJB, 2020 U.S. Dist. LEXIS 86292, at *6 (E.D.N.Y. May 13, 2020) (filing a notice on *Globe Newswire* satisfied the PSLRA's notice requirement).

Movant timely filed his motion within the 60-day period following publication of the June 19, 2020 Press Release and submitted herewith a sworn certification attaching his transactions in Casper securities and attesting that he is willing to serve as a representative of the Class. *See* Hopkins Decl., Ex. A. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(aa).

### 2.     Movant Has the Largest Financial Interest in the Relief Sought.

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief

7

sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant acquired Casper securities pursuant or traceable to the IPO at prices alleged to have been artificially inflated by Defendants' materially false and misleading statements and was injured thereby. As a result of Defendants' false statements, Movant suffered an approximate loss of $3,220. *See* Hopkins, Ex. B. Movant is unaware of any other Class member claiming a larger financial interest in this matter that has filed a motion for appointment as lead plaintiff. Consequently, Movant believes that he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest— and should be appointed as lead plaintiff for the Class. *See Top Ships,* 324 F. Supp. 3d at 350.

### 3. Movant Satisfies the Relevant Requirements of Rule 23.

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, typicality and adequacy are the only provisions of Rule 23 that are to be considered. *Ford v. VOXX Int'l Corp.,* No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705, at *6 (E.D.N.Y. Apr.

8

13, 2015) (citing *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 112 (E.D.N.Y. 2012)). At the lead plaintiff stage of the litigation, Movant need only make a preliminary showing that he satisfies Rule 23's typicality and adequacy requirements. *Id.* at *6.

### a.    Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008); Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning Casper's business, operations and financial prospects violated the federal securities laws. Movant, like all members of the Class, purchased or otherwise acquired Casper securities pursuant to the Registration Statement. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at *12 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.    Movant Is an Adequate Representative.

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe Emps.' Ret. Sys. v.*

9

*Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). Movant has demonstrated his adequacy by retaining competent and experienced counsel, Levi & Korsinsky, with the resources and expertise to efficiently prosecute the Actions, and Movant's financial losses ensure that he has sufficient incentive to ensure the vigorous advocacy of the Actions. *See* Hopkins Decl., Ex. B. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

Furthermore, Movant is ideally suited to act as an advocate and fiduciary of the Class. Movant, located in Southern Shores, North Carolina, is a sophisticated investor with over six years of investing experience. Movant possesses a Juris Doctor degree. He is now retired but previously, Movant was a practicing attorney, was a judge for 16 years, and is a former prosecutor for Geauga County, Ohio. Accordingly, Movant meets the adequacy requirement of Rule 23.

### B.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate.

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on his behalf and has retained the firm as the Class' Lead Counsel in the event he is appointed as lead plaintiff. Levi & Korsinsky possesses adequate experience in securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors, as reflected by the Firm Résumé attached to the Hopkins Decl. as Ex. D. Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions in this Circuit and across the country arising under the federal securities laws on behalf of investors. *See, e.g., See Deinnocentis v. Dropbox, Inc.,* No. 19-cv-

06348-BLF, 2020 U.S. Dist. LEXIS 8680, at *13 (N.D. Cal. Jan. 16, 2020*); Zhang v. Valaris PLC, et al.,* No. 1:19-cv-07816-NRB (S.D.N.Y. Dec. 23, 2019); *In re Sundial Growers Inc. Sec. Litig.,* No. 1:19-cv-08913-ALC (S.D.N.Y. Dec. 20, 2019); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 200717, at *20 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 U.S. Dist. LEXIS 212238 (N.D. Cal. Dec. 17, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions."); *Pope v. Navient Corp.*, No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340, at *13–14 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377, at *4 (S.D.N.Y. Oct. 5, 2016) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions"); Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as lead plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: August 18, 2020                    Respectfully Submitted,

                                          **LEVI & KORSINSKY, LLP**

                                          By: /s/ *Shannon L. Hopkins*
                                          Shannon L. Hopkins (SH-1887)
                                          55 Broadway, 10th Floor
                                          New York, NY 10006
                                          Tel: (212) 363-7500
                                          Fax: (212) 363-7171
                                          Email: shopkins@zlk.com

                                          *Lead Counsel for Movant and [Proposed]*
                                          *Lead Counsel for the Class*

12