UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT LEMATTA, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CASPER SLEEP INC., PHILIP KRIM, GREGORY MACFARLANE, NEIL PARIKH, DIANE IRVINE, ANTHONY FLORENCE, JACK LAZAR, BENJAMIN LERER, KAREN KATZ, DANI REISS, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO. LLC, JEFFERIES LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., PIPER SANDLER & CO. and GUGGENHEIM SECURITIES, LLC,<br><br>    Defendants. | Case No.  1:20-cv-02744-MKB-RML |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SALEH DORON GAHTAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT...................................................................................................................6

      A.      GAHTAN SHOULD BE APPOINTED LEAD PLAINTIFF ...............................6

             1.      Gahtan Is Willing to Serve as Class Representative...................................7

             2.      Gahtan Has the "Largest Financial Interest" ..............................................7

             3.      Gahtan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure...................................................................8

             4.      Gahtan Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses...........................................11

      B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................................11

CONCLUSION..............................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ...............................................................................9

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...........................................................8

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ..........................................................10

*Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A,
1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ...............................................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................10

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ...........................................................................9

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ...............................................................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).......................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..........................................................8, 12

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992).......................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .................................................................................11

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................8, 9

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
2008 WL 2811358 (S.D.N.Y. July 7, 2008) .............................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................9

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ........................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................11

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ......................................................................7, 8

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ....................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................................11

## Statutes

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)................................................................................11

15 U.S.C. § 77z-1(a)(3)(B)(v)...............................................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................. *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 ............................................................. *passim*

Movant Saleh Doron Gahtan ("Gahtan") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Gahtan as Lead Plaintiff on behalf of persons or entities who purchased or otherwise acquired publicly traded Casper Sleep Inc. ("Casper" or the "Company") securities in or traceable to the Company's public offering conducted on or around February 7, 2020 (the "IPO") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).  Gahtan, with losses of approximately $1,774,649 in connection with his purchases of publicly traded Casper securities in or traceable to the IPO, believes that he has the

---

[1] Gahtan is aware of Rule 3.D. of the Court's Individual Practices and Rules, which provides, in relevant part, that: "**As a courtesy to the Court, the Court requests that the parties refrain from filing motion papers until the motion has been fully briefed.** If the parties elect to file their motion only once it is fully briefed, the notice of motion and all supporting papers are to be served on the other parties along with a cover letter setting forth whom the movant represents and the papers being served." (Emphasis in original.)  Here, pursuant to the PSLRA, the deadline to file a motion for appointment as Lead Plaintiff in the above-captioned action (the "Action") is August 18, 2020, on which date any member of the putative class may so move. Gahtan will thus not know the identities of the other putative class members, if any, who intend to file competing Lead Plaintiff motions until August 18, 2020—the day after the statutory deadline—making service of Gahtan's motion papers prior to their filing impracticable.  Under these circumstances, Gahtan respectfully requests that compliance with Rule 3.D. be waived in this instance.  Likewise, Gahtan respectfully submits that the 60-day PSLRA deadline falls within the exception to Rule 3.D. set forth in Rule 3.E., which states, in relevant part, that "these practices do not require . . . that a motion be fully briefed before it is filed when strictly enforced time limits must be met to preserve rights."

largest financial interest in the relief sought in the Action.  Gahtan further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure because he is an adequate representative with claims typical of the other Class members.  Accordingly, Gahtan respectfully submits that he should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

As alleged in the Complaint in the Action, since its founding in 2014, Casper has shown tremendous growth.  For the years 2018, 2017, and 2016, the Company claimed to have achieved net revenue of $357.9 million, $250.9 million, and $169.1 million, respectively, representing a 45.5% compound annual growth rate.  As the Company expanded its business, it also incurred losses, incurring a net loss of $92.1 million and $73.4 million in 2018 and 2017, respectively.

However, in the lead-up to the IPO, Casper claimed to have significantly improved its profit margins, placing it on a path to profitability.  The Company stated that it had achieved 50.7% in gross margins for the three months ended September 30, 2019, up from 42.8% for the year ended December 31, 2016.  In addition, Casper maintained that its core operations were profitable.  For example, the Company represented that as of September 30, 2019, its existing stores that had been operating for one year or longer were "all four-wall profitable," which it defined as gross profit, less operating expenses (excluding one-time costs and non-allocable expenses).  The Company claimed that its growing e-commerce operations were likewise profitable, stating that from 2017 through September 30, 2019 it had maintained "first purchase profitable" e-commerce economics, defined as gross profit dollars, less marketing dollars over the time period.

As of December 31, 2018, Casper had $26.9 million in cash and cash equivalents on hand.  During that same year, the Company had a negative net cash flow of $53.3 million,

requiring it to raise capital through financing activities in 2019. Moreover, the Company took on a substantial amount of debt in the lead-up to the IPO. As of September 30, 2019, the Company had over $40 million in senior secured and subordinate debt, as well as a substantial amount of preferred stock outstanding. As a result, it was of the utmost importance to investors that: (1) Casper's mature and stable retail store and e-commerce operations were, in fact, profitable; (2) the Company's margins were, in fact, improving; and (3) the Company was, in fact, on a sustained path to profitability. In addition, any potential business disruption risks that could threaten the Company's cash flows, margins or operating activities, even in the short-term, significantly undermined the Company's value proposition and its portrayal as a high-growth stock.

On January 10, 2020, the Company filed its Registration Statement on Form S-l for the IPO, which, after several amendments, was declared effective by the SEC on February 5, 2020 (the "Registration Statement"). On February 7, 2020, Casper filed its Prospectus on Form 424B4 with the SEC. In the IPO, defendants sold 8.35 million shares of Casper common stock at $12 per share, generating over $100 million in gross proceeds.

The Registration Statement was negligently prepared, and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation.

Specifically, statements in the Registration Statement were inaccurate statements of material fact because they failed to disclose the following adverse facts that existed at the time of the IPO: (a) that Casper's profit margins were actually declining, rather than growing; (b) that Casper was changing an important distribution partner, costing it 130 basis points of gross

3

margin in the first quarter of 2020 alone; (c) that Casper was holding a glut of old and outdated mattress inventory that it was selling at steeply discounted clearance prices, further impairing the Company's profitability; (d) that Casper was suffering accelerating losses, further placing its ability to achieve positive cash flows and profitability out of reach; (e) that Casper's core operations were not profitable, but were causing the Company to suffer over $40 million in negative cash flows during the first quarter of 2020 alone and doubling its quarterly net loss year over year; (f) that, as a result of (a)-(e) above, Casper's ability to achieve profitability, implement its growth initiatives, and expand internationally had been misrepresented in the Registration Statement, as the Company needed to shutter its European operations, halt all international expansion, jettison over one fifth of its global corporate workforce, and significantly curtail new store openings in order to avoid an imminent cash and liquidity crisis, let alone achieve positive operating cash flows; and (g) that, as a result of (a)-(f) above, Casper's revenue growth rate was not sustainable and had not positioned the Company to achieve profitability.

Shortly after the IPO, Casper announced downward gross margin trends and substantially impaired operations as a result of an increasingly dire cash flow situation.

On April 21, 2020, Casper announced that it was taking significant actions to improve its cash position and business model, notwithstanding the fact that the Company had raised more than $100 million in gross offering proceeds from the IPO less than three months previously. The Company stated that it was reducing the size of its global operations and sales team and completely winding down its European operations, leading to the loss of 21% of its entire corporate workforce globally. These drastic measures were necessitated by the Company's ballooning losses and deteriorating cash position. The Company also stated that defendant

4

Gregory Macfarlane, the Company's Chief Financial Officer and Chief Operating Officer, was resigning—an extraordinary move so soon after the IPO.

On May 12, 2020, Casper issued a release providing its financial results for the quarter ended March 31, 2020—the same quarter during which defendants conducted the IPO. The Company stated that it had suffered a net loss of $34.5 million, a 98% increase year over year, and an adjusted EBITDA loss of $22.9 million, a 60% increase year over year. In addition, the Company stated that its gross margin had actually fallen during the quarter by 190 basis points.

On an earnings call to discuss Casper's first quarter 2020 results, defendant Philip Krim stated that the decrease in net margin was due to a change in one of Casper's logistics providers and an abnormally high number of clearance sales needed to get rid of old mattress inventory that had built up prior to the IPO. Defendant Krim also stated that the Company was substantially reducing the number of planned retail openings, further crimping its growth prospects.

Also on May 12, 2020, Casper filed its quarterly report on Form 10-Q in which it stated that its cash and cash equivalents had only increased $48.5 million during the quarter, despite the fact that the Company received over $88 million in net cash proceeds from the IPO. The Form 10-Q stated that during the quarter Casper had suffered over $40 million in negative cash flows from operating and investing activities. As the Company had only $116 million in cash on hand as of March 31, 2020, at this rate Casper was on track to run out of cash entirely within a year.

As of market close on June 4, 2020, Casper stock was trading at just $8.18 per share, 32% below the IPO price.

5

As a result of the above-captioned defendants' ("Defendants") wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, the plaintiff in the Action and other Class members have suffered significant losses and damages.

## ARGUMENT

### A.  GAHTAN SHOULD BE APPOINTED LEAD PLAINTIFF

Gahtan should be appointed Lead Plaintiff because he has the largest financial interest in the Action and otherwise meets the requirements of Rule 23.  Section 27(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Securities Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

6

As set forth below, Gahtan satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Gahtan Is Willing to Serve as Class Representative

On June 19, 2020, counsel for plaintiff in the Action caused a notice to be published over *Business Wire* pursuant to Section 27(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors in Casper securities that they had until August 18, 2020—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff.  *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A.

Gahtan has filed the instant motion pursuant to the Notice and has submitted a signed Certification attesting that he is willing to serve as a representative for the Class, and provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, Gahtan satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.    Gahtan Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii).  To the best of his knowledge, Gahtan has the largest financial interest of any Casper investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5

7

(N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at \*6-8 (E.D.N.Y. Mar. 2, 2007).

In or traceable to the IPO, Gahtan: (1) purchased 417,600 shares of publicly traded Casper securities; (2) expended $5,979,758 on his purchases of publicly traded Casper securities; and (3) as a result of the disclosures revealing the misrepresentations and/or omissions in the Registration Statement, suffered a loss of $1,774,649 in connection with his purchases of publicly traded Casper securities in or traceable to the IPO.  *See* Lieberman Decl., Ex. C. Because Gahtan possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

### 3.    Gahtan Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 27(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[2] *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at \*4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at \*1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

8

representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

In making its determination that a Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Federal Rule of Civil Procedure 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

9

The claims of Gahtan are typical of those of the Class.  Like all Class members, Gahtan alleges that: (1) Defendants violated the Securities Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning Casper; (2) Gahtan and the Class members purchased Casper's publicly traded securities in or traceable to the IPO at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions; and (3) Gahtan and the Class members were damaged upon the revelation of Defendants' alleged misrepresentations or omissions through corrective disclosures that drove Casper's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Gahtan is an adequate representative for the Class.  There is no antagonism between the interests of Gahtan and those of the Class, and his losses demonstrate that he has a sufficient interest in the outcome of this litigation.  Finally, Gahtan has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v).

10

**4.    Gahtan Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption in favor of appointing Gahtan as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The ability and desire of Gahtan to fairly and adequately represent the Class has been discussed above.  Gahtan is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Gahtan should be appointed Lead Plaintiff for the Class.

**B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v).  The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Gahtan has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. D. Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat investors that it has reached a $110 million settlement with the company. *Id.* As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Action, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Action. Thus, the Court may be assured that by approving the selection of Lead Counsel by Gahtan, the members of the Class will receive the best legal representation available.

## **CONCLUSION**

For the foregoing reasons, Gahtan respectfully requests that the Court issue an Order: (1) appointing Gahtan as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  August 18, 2020

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Saleh Doron Gahtan and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
(*pro hac vice* application forthcoming)
1880 Century Park East, Suite 404
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Saleh Doron Gahtan*

13