**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ROBERT LEMATTA, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>CASPER SLEEP INC., PHILIP KRIM, GREGORY MACFARLANE, NEIL PARIKH, DIANE IRVINE, ANTHONY FLORENCE, JACK LAZAR, BENJAMIN LERER, KAREN KATZ, DANI REISS, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO., LLC, JEFFERIES LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., PIPER SANDLER & CO. and GUGGENHEIM SECURITIES, LLC,<br><br>   Defendants. | Case No. 1:20-cv-02744-MKB-RML |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO STAY ALL
PROCEEDINGS PENDING DISPOSITION OF MOTION
TO DISMISS AN EARLIER-FILED STATE ACTION**

PAUL, WEISS, RIFKIND,
 WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8677

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

Preliminary Statement ..................................................................................................1

Factual and Procedural Background ...............................................................................2

    A.    Casper's 2020 Initial Public Offering, the COVID-19 Pandemic, and Casper's First Quarter Report ...............................................................2

    B.    The New York State Court Actions...........................................................4

    C.    This Federal Action .................................................................................5

    D.    Overlap Between the Actions ...................................................................6

Argument ....................................................................................................................9

I.    This Court Should Exercise Its Inherent Power, and Apply the "First-Filed Rule," to Stay the Pending Litigation..............................................................9

    A.    The Applicable Legal Standard ................................................................9

    B.    The Federal Action Should Be Stayed Under the Court's Inherent Powers and the First-Filed Rule ...............................................................12

II.    Even Under the *Colorado River* Factors, the Court Should Stay the Pending Litigation ..........................................................................................14

Conclusion ................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bristol Heights Assocs., LLC* v. *Chicago Title Ins. Co.*,
2011 WL 3930299 (D. Conn. Mar. 30, 2011) ...............................................................17

*Castillo* v. *Taco Bell of Am., LLC*,
960 F. Supp. 2d 401 (E.D.N.Y. 2013) .........................................................................11

*Clark* v. *Lacy*,
376 F.3d 682 (7th Cir. 2004) ...............................................................................15, 16

*Cole* v. *Edwards*,
2004 WL 1874970 (S.D.N.Y. Aug. 13, 2004)..............................................................10

*Colony Ins. Co.* v. *Danica Grp. LLC*,
2014 WL 4417353 (E.D.N.Y. Sept. 8, 2014) ...............................................................16

*Colorado River Water Conserv. Dist.* v. *United States*,
424 U.S. 800 (1976)..................................................................................................14

*Eternal Asia Supply Chain Mgmt. (USA) Corp.* v. *EQD Corp.*,
2012 WL 6186504 (S.D.N.Y. Dec. 12, 2012) ..............................................................11

*First City Nat'l Bank & Trust Co.* v. *Simmons*,
878 F.2d 76 (2d Cir.1989) .........................................................................................10

*First Keystone Consultants* v. *Schlesinger*,
862 F. Supp. 2d 170 (E.D.N.Y. 2012) .........................................................................16

*Fried* v. *Lehman Bros. Real Estate Assocs. III, LP*,
2012 WL 252139 (S.D.N.Y. Jan. 12, 2012) ................................................................10

*Garcia* v. *Tamir*,
1999 WL 587902 (S.D.N.Y. Aug. 4, 1999)..................................................................15

*Gen. Star Int'l Indemnity, Ltd.* v. *Chase Manhattan Bank*,
57 F. Appx. 892 (2d Cir. 2003) ..................................................................................16

*Glenclova Inv. Co.* v. *Trans-Res., Inc.*,
874 F. Supp. 2d 292 (S.D.N.Y. 2012) .........................................................................14

*Kappel* v. *Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996) ............................................................................10

ii

*Landis* v. *N. Am. Co.*,
   299 U.S. 248 (1936)..............................................................................................9

*Lawrence Moskowitz CLU Ltd.* v. *ALP, Inc.*,
   2020 WL 1503558 (S.D.N.Y. Mar. 30, 2020) ..............................................17

*Lefkowitz* v. *Bank of N.Y.*,
   676 F. Supp. 2d 229 (S.D.N.Y. 2009) ..........................................................16

*Malcolm* v. *Honeoye Falls-Lima Educ. Assoc.*,
   No. 08-CV-6551, 2011 WL 13359375 (W.D.N.Y. Aug. 3, 2011) ...............14

*Nakash* v. *Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ......................................................................15

*Names for Dames* v. *Gimbel*,
   No. 88 Civ. 3692, 1989 WL 82417 (S.D.N.Y. July 19, 1989) ....................14

*Niagra Mohawk Power Corp.* v. *Hudson River-Black River Regulating
   Dist.*,
   673 F.3d 84 (2d Cir. 2012) ...........................................................................15

*In re NIO, Inc. Sec. Litig.*,
   No. 0653422/2019 (N.Y. Sup. Ct. Aug. 21, 2020) .......................................13

*Romine* v. *Compuserve Corp.*,
   160 F.3d 337 (6th Cir. 1989) ........................................................................17

*Royal and Sun Alliance Ins. Co. of Canada* v. *Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006) ...........................................................................16

*Santana* v. *Cavalry Portfolio Servs., LLC*,
   2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019)...............................................11

*Telesco* v. *Telesco Fuel & Masons' Materials, Inc.*,
   765 F. 2d 356 (2d Cir. 1985) ........................................................................17

*Trikona Advisors Ltd.* v. *Kai-Lin Chuang*,
   No. 12-cv-3886, 2013 WL 1182960 (E.D.N.Y. Mar. 20, 2013) ..............9, 10

*Woodhams* v. *Pfizer, Inc.*,
   2019 WL 1432769 (S.D.N.Y. Mar. 29, 2019)...............................................11

*Wyler-Wittenberg* v. *MetLife Home Loans, Inc.*,
   899 F. Supp. 2d 235 (E.D.N.Y. 2012) ..........................................................11

iii

**STATUTES**

15 U.S.C. §§ 77k, 77o................................................................................................passim

15 U.S.C. §§ 78j(b), 78t(a) .......................................................................................passim

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5(b)....................................................................................................12

Casper, *Casper Provides Business Update on COVID-19* (Mar. 16, 2020),
available at https://ir.casper.com/news-and-events/news-
details/2020/Casper-Provides-Business-Update-On-COVID-
19/default.aspx;.............................................................................................................4

Casper, *Casper Provides Business Updates* (Apr. 21, 2020), available at
https://ir.casper.com/news-and-events/news/news-details/2020/Casper-
Provides-Business-Updates/default.aspx.......................................................................4

Casper, *Casper Reports First Quarter 2020 Results* (May 12, 2020),
https://ir.casper.com/news-and-events/news/news-details/2020/Casper-
Reports-First-Quarter-2020-Results/default.aspx.........................................................4

*Coronavirus: Germany Latest Country to Close Borders*, BBC (Mar. 16,
2020), https://www.bbc.com/news/world-europe-51905129 .......................................3

*Coronavirus: Italy Extends Emergency Measures Nationwide*, BBC (Mar.
10, 2020), https://www.bbc.com/ news/world-europe-51810673 ................................3

*World Health Organization Declares COVID-19 a "Pandemic." Here's What
That Means*, Time (Mar. 11, 2020), available at
https://time.com/5791661/who-coronavirus-pandemic-declaration/............................3

*Coronavirus: What Are the Lockdown Measures Across Europe?*, Deutsche
Welle (last accessed Nov. 4, 2020), https://www.dw.com/en/coronavirus-
what-are-the-lockdown-measures-across-europe/a-52905137 ....................................3

*Gorenberg* v. *Casper Sleep, Inc.*,
No. 653118/20 (filed July 15, 2020)..........................................................................5

*In re Casper Sleep Inc. Sec. Litig.*,
No. 652284/20 ......................................................................................................1, 5

*Jankowiak* v. *Casper Sleep, Inc.*,
No. 652507/20 (filed June 16, 2020)..........................................................................4

Joseph Goldstein & Jesse McKinley, *Coronavirus in N.Y.: Manhattan
Woman Is First Confirmed Case in State*, The New York Times (Mar.
1, 2020), available at https://www.nytimes.com/2020/03/01/nyregion/
new-york-coronvirus-confirmed.html .............................................................................3

*Mattern* v. *Casper Sleep, Inc.*,
No. 653112/20 (filed July 15, 2020)................................................................................5

*Patel* v. *Casper Sleep, Inc.*,
No. 652284/20 (filed June 5, 2020) ................................................................................5

Shayna Jacobs et al., *Coronavirus in New York: Cuomo Orders Shutdown
of All Nonessential Businesses*, The Washington Post (Mar. 20, 2020),
available at https://www.washingtonpost.com/national-
security/coronavirus-new-york-shutdown-
cuomo/2020/03/20/ce124798-6aca-11ea-abef-
020f086a3fab_story.html.............................................................................................3

Defendants Casper Sleep Inc., ("Casper"); Philip Krim, Gregory Macfarlane, and Neil Parikh (the "Officer Defendants"); Diane Irvine, Anthony Florence, Jack Lazar, Benjamin Lerer, Karen Katz, and Dani Reiss (the "Director Defendants") (collectively, the "Casper Defendants"); and Morgan Stanley & Co. LLC, Goldman Sachs & Co., LLC, Jefferies LLC, BofA Securities, Inc., UBS Securities LLC, Citigroup Global Markets Inc., Piper Sandler & Co., and Guggenheim Securities, LLC (the "Underwriter Defendants," and together with the Casper Defendants, "Defendants") respectfully submit this memorandum of law in support of their motion to stay all proceedings in this action (the "Federal Action") pending disposition of the motion to dismiss in the earlier-filed action pending in the New York Supreme Court, *In re Casper Sleep Inc. Securities Litigation*, No. 652284/20 (the "State Action").

**Preliminary Statement**

In a familiar tactic, Casper shareholders represented by various plaintiff firms have filed nearly identical putative class actions in both state and federal court arising from Casper's February 7, 2020 initial public offering ("IPO"). These shareholders purport to represent the same putative class of investors, sue the exact same defendants, and allege federal securities law violations based on substantially identical alleged misstatements.

This Federal Action was not the first-filed case, nor was it the second-filed case. Rather, it was the third-filed action, brought weeks after complaints were filed in New York state court. Under the first-filed rule, which is routinely applied to parallel actions filed in different courts, the State Action plainly has priority over the Federal Action, and a limited stay pending

1

disposition of the motion to dismiss in the State Action is warranted to avoid duplication of efforts among the parties and inefficient use of judicial resources.[1]

But the shareholder plaintiff and its counsel here insist that the Federal Action should proceed simultaneously with the State Action—plainly jockeying to advance the Federal Action ahead of the earlier-filed State Action.  In particular, the plaintiff proposes that motions to dismiss in both the first-filed State Action, as well as the later-filed Federal Action, should proceed apace, with Defendants incurring the time and expense of simultaneously litigating motions to dismiss before two judges in two different courts.  The plaintiff further proposes that the judges in both courts should waste judicial resources to adjudicate these motions at the same time.  There is no compelling reason to subject this Court or the parties to such inefficiency, which at best asks two judges to decide the same legal issues simultaneously, and at worst risks potentially conflicting decisions issued by two judges without the benefit of establishing an order of priority for the anticipated motions to dismiss.

For these reasons, as addressed further below, a limited stay to allow the New York Supreme Court to adjudicate the motion to dismiss in the first-filed action is appropriate.

**Factual and Procedural Background**

A.      **Casper's 2020 Initial Public Offering, the COVID-19 Pandemic, and Casper's First Quarter Report**

Casper is a New York-based company that sells mattresses and other sleep-related products and services.  (*See* Ex. 1 ¶ 15[2] ("Fed. Compl." or "Federal Complaint").)  Casper

---

[1]     At this time, Defendants seek a limited stay pending disposition of the motion to dismiss in the State Action.  Defendants reserve all rights, should the State Action survive that motion to dismiss, to move to modify or extend any stay.

[2]     Citations to "Ex. __ " are to the exhibits attached to the Declaration of Audra J. Soloway, submitted herewith.  Citations to the state and federal complaint cite the applicable paragraph number and the other citations cite the page number of the original filing.

conducted an IPO and filed its Prospectus with the SEC on February 7, 2020.  (*Id.* at ¶ 85.)  In connection with that IPO, Casper issued a registration statement and prospectus (*see* Casper Registration Statement (Jan. 30, 2020) ("Registration Statement"); these Registration Statement disclosures are the focus of both the State Action and the Federal Action.

In March 2020, weeks after Casper went public, the world changed.  On March 1, 2020 the first patient tested positive for the novel coronavirus (COVID-19) in New York City.[3] On March 11, 2020, the World Health Organization declared a global pandemic.[4]  In Europe, beginning on March 11 and continuing over several weeks, many European countries imposed lockdowns and closed non-essential businesses.[5]  In March, lockdowns were also imposed across the United States, including in New York City.[6]

Casper—like every other company—grappled with this unprecedented crisis, for which there was no playbook, by taking immediate steps to protect its employees and business. Even before Governor Cuomo implemented a state-wide lockdown of non-essential businesses, Casper began closing its retail store operations "in response to the continued spread of COVID-

---

[3]   Joseph Goldstein & Jesse McKinley, *Coronavirus in N.Y.: Manhattan Woman Is First Confirmed Case in State*, The New York Times (Mar. 1, 2020), available at https://www.nytimes.com/2020/03/01/nyregion/ new-york-coronvirus-confirmed.html.

[4]   Domenico Cucinotta & Maurizio Vanelli, *WHO Declares COVID-19 a Pandemic*, Acta Biomed. (Mar. 2020); *see also* Jamie Ducharme, *World Health Organization Declares COVID-19 a "Pandemic." Here's What That Means*, Time (Mar. 11, 2020), available at https://time.com/5791661/who-coronavirus-pandemic-declaration/.

[5]   *Coronavirus: What Are the Lockdown Measures Across Europe?*, Deutsche Welle (last accessed Nov. 4, 2020), https://www.dw.com/en/coronavirus-what-are-the-lockdown-measures-across-europe/a-52905137; *see also Coronavirus: Italy Extends Emergency Measures Nationwide*, BBC (Mar. 10, 2020), https://www.bbc.com/ news/world-europe-51810673; *Coronavirus: Germany Latest Country to Close Borders*, BBC (Mar. 16, 2020), https://www.bbc.com/news/world-europe-51905129.

[6]   Shayna Jacobs et al., *Coronavirus in New York: Cuomo Orders Shutdown of All Nonessential Businesses*, The Washington Post (Mar. 20, 2020), available at https://www.washingtonpost.com/national-security/coronavirus-new-york-shutdown-cuomo/2020/03/20/ce124798-6aca-11ea-abef-020f086a3fab_story.html.

19," explaining that its "top priority is to do the right thing for the health and safety of [Casper's] employees and customers."[7]  Ultimately, on May 12, 2020, when Casper announced its first quarter 2020 results (the "1Q20 results"), it identified a number of ways in which COVID-19 had adversely impacted its business, including temporary store closures beginning on March 17, 2020, which reduced its revenue in its owned retail stores; reduction of planned new retail store openings in 2020 due to the pandemic; and temporary shutdowns of certain of its suppliers, which affected its inventory availability and delivery capacity.[8]  Casper also announced that it had implemented certain changes to strengthen its balance sheet position and provide it with flexibility and resilience to weather the uncertainty sparked by the COVID-19 pandemic, including an employee furlough program, the wind-down of European operations to increase savings, and other cost-reduction initiatives, as well as continued monitoring of and investment in its e-commerce platform and marketing.[9]

### B.  The New York State Court Actions

Shortly after Casper announced its 1Q20 results, shareholders commenced litigation.  In New York state court, multiple plaintiffs filed separate actions on behalf of the same class of shareholders asserting claims under the Securities Act of 1933 ("State Plaintiffs").  Specifically, on June 5, 2020, June 16, 2020, and July 15, 2020, four actions were filed against Defendants in the Supreme Court of New York, all alleging violations of Sections 11 and 15 of

---

[7]  Casper, *Casper Provides Business Update on COVID-19* (Mar. 16, 2020), available at https://ir.casper.com/news-and-events/news/news-details/2020/Casper-Provides-Business-Update-On-COVID-19/default.aspx; Casper, *Casper Provides Business Updates* (Apr. 21, 2020), available at https://ir.casper.com/news-and-events/news/news-details/2020/Casper-Provides-Business-Updates/default.aspx.

[8]  Casper, *Casper Reports First Quarter 2020 Results* (May 12, 2020), https://ir.casper.com/news-and-events/news/news-details/2020/Casper-Reports-First-Quarter-2020-Results/default.aspx.

[9]  *Id.*

4

the Securities Act of 1933 (the "'33 Act" or "Securities Act").  (*See* Ex. 2 at 3 (*Patel* v. *Casper Sleep, Inc.*, No. 652284/20 (filed June 5, 2020); *Jankowiak* v. *Casper Sleep, Inc.*, No. 652507/20 (filed June 16, 2020); *Gorenberg* v. *Casper Sleep, Inc.*, No. 653118/20 (filed July 15, 2020); and *Mattern* v. *Casper Sleep, Inc.*, No. 653112/20 (filed July 15, 2020).)  The state court granted the parties' joint stipulation to consolidate the related State Actions into a single action on August 12, 2020, styled *In re Casper Sleep Inc. Securities Litigation*, No. 652284/20, which is pending before the Honorable Jennifer G. Schecter.  (*Id.* at  4–5.)

The State Plaintiffs filed a consolidated Amended Complaint on October 26, 2020, which is now the operative complaint in that action. (*See* Ex. 3 ("State Complaint" or "State Compl.").) Defendants' Motion to Dismiss is due on December 28, 2020, State Plaintiffs' opposition is due within 60 days of its filing, and Defendants must file any reply papers within 30 days of State Plaintiffs' opposition.  (*See* Ex. 4 at 3–4.)  The motion to dismiss briefing thus will be completed in the State Action no later than March 29, 2021.  (*Id.*)

## C.    This Federal Action

On June 19, 2020, two weeks after the first state action was filed, the instant case was filed in this Court against the *same* Defendants, alleging the *same* violations of the Securities Act as the State Action.  (Ex. 5.)  In a teleconference on August 27, 2020, this Court (Levy, U.S.M.J.) appointed Saleh Doron Ghatan as Lead Plaintiff (the "Federal Plaintiff") and Pomerantz LLP as Lead Plaintiff's counsel, and granted Federal Plaintiff until October 27, 2020 to file an Amended Complaint.

During that conference, Defendants advised Judge Levy about the existence of the earlier-filed State Action, and indicated that Defendants may seek to stay the Federal Action. Immediately after Defendants raised the issue of a stay, Federal Plaintiff objected on the basis

that it may amend the complaint to add intentional fraud claims under Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act" or "Exchange Act"), which are not included in the State Action.  Federal Plaintiff suggested that such an addition would suffice to prevent the two actions from being duplicative because '34 Act claims can only be pursued in federal court.

On October 27, 2020, the Federal Plaintiff amended the Complaint, and for the first time in the Amended Complaint, asserted a Section 10(b) claim.  (Fed. Compl. ¶ 131.)  But as discussed in greater detail *infra* Section D, the  alleged misstatements identified in the Amended Complaint as the basis for the '33 Act and '34 Act claims concern the same subjects as the alleged misstatements at issue in the State Action—and often consist of the very same block quotes from the IPO Registration Statement.

### D.      Overlap Between the Actions

It is clear that the State and Federal Actions significantly overlap.  Like the State Plaintiffs, Federal Plaintiff purports to represent the *same* putative class of persons or entities "who purchased or otherwise publicly traded Casper securities in or traceable to the Company's public offering conducted on or around February 7, 2020." (Fed. Compl. ¶ 1; State Compl. ¶ 1.) Likewise, the Federal Action and the State Action name the same defendants:  Casper, its directors and officers who signed the Registration Statement, and the underwriters who assisted with the IPO.  (Fed. Compl. ¶ 15–34; State Compl. ¶¶ 16–24.)  And, critically, both actions assert the same theory of liability, namely, that Casper's IPO offering documents were "false and misleading" and "contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation."  (Fed. Compl. ¶¶ 19, 20, 30, 32, 80–95; State Compl. ¶¶ 9, 21, 23, 34–65.)

6

Indeed, the plaintiffs in both the State Action and Federal Action even rely on the same categories of alleged misstatements regarding Casper's growth and profitability, distribution network, discounted inventory, and store closures. (State Compl. ¶¶ 41–48, 52, 55, 58, 65; Fed. Compl. ¶ 95.) And beyond identifying the same categories of misstatements, the State and Federal Plaintiffs cite nearly identical sets of alleged misstatements in Casper's Registration Statement. (*Compare* Fed. Compl. ¶¶ 80–95 *with* State Compl. ¶¶ 34–65.) Examples of the identical misstatements include:[10]

- **Alleged Misstatements About Casper's Profits and Profitability Trends**

  ". . . From 2017 through September 30, 2019, while growing our e-commerce channel, we have maintained 'first purchase profitable' ecommerce economics, defined as gross profit dollars, less marketing dollars, over a specific time period." (State Compl. ¶ 36; Fed. Compl. ¶ 89.) (emphasis omitted).

  "We are committed to improving productivity and profitability through a number of operational initiatives designed to grow our revenue and expand our margins. To date, Casper has had significant results improving gross margins, achieving 50.7% in gross margin for the three months ended September 30, 2019, up from 42.8% for the year ended December 31, 2016. Overall business profitability will be driven by continued net revenue growth in conjunction with gross margin improvements, continued marketing efficiencies, and generating operating leverage. . . ." (State Compl. ¶ 40; Fed. Compl. ¶ 91.) (emphasis omitted).

- **Alleged Misstatements About Casper's Distribution Network**

  "Supply Chain[:] We manage a global supply chain of highly qualified, third-party manufacturing and logistics partners to produce and distribute our products. We work with partners who deliver production flexibility and scalability, can support new products, help our growing channel strategies, deliver low costs, and meet other required operational needs. . . ." (State Compl. ¶ 50; Fed. Compl. ¶ 94.) (emphasis omitted).

  "Distribution and Inventory Management[:] . . . We also work with multiple third-party logistics providers to warehouse our products and manage shipments to our customers. These providers manage distribution activities including product receipt, warehousing, certain limited product inspection activities, and

---

[10]  A chart noting all of the overlapping alleged misleading statements in the State Action and Federal Action is available at Exhibit 6.

7

coordinating outbound shipping. They are strategically located in key markets to provide fast order-to-delivery times. Our warehouse management system at these distribution centers interfaces with our order management and enterprise resource planning systems to ensure inventory visibility and management. We believe our domestic and international providers have sufficient expansion capacity to meet our future needs." (State Compl. ¶ 50; Fed. Compl. ¶ 94.) (emphasis omitted).

- **Alleged Misstatements About Casper's Promotional Strategies:**

  "Optimize Price.  Through investment in human capital and technology we intend to continue building a data-based understanding of price elasticity dynamics, promotional strategies and other price management tools to drive optimized pricing for Casper and our retail partners." (State Compl. ¶ 53; Fed. Compl. ¶ 91.) (emphasis omitted).

- **Alleged Misstatements About Casper's Cash Position and Cash Flows**

  "Consumers have proven to be highly engaged when they experience our retail stores and spend, on average, more than 25 minutes in store when they visit. Across our retail channel, our AOV increased from $437 in 2017 to $720 in 2018 and to $820 for the nine months ended September 30, 2019. . . Our presence in physical retail stores has proven complementary to our e-commerce channel, as we believe interaction with multiple channels has created a synergistic 'network effect' that increases system-wide sales as a whole.  Driving continued success in our retail store expansions will be an important contributor to our future growth and profitability." (State Compl. ¶ 57; Fed. Compl. ¶ 88.) (emphasis omitted).

- **Alleged Misstatements About Casper's Growth Trends**

  "Our Growth Strategy[:] We have achieved rapid growth, generating 45.5% net revenue CAGR from 2016 to 2018, and 20.3% year-over-year net revenue growth for the nine months ended September 30, 2019. We have also expanded our gross margin from 42.8% in 2016 to 44.1% in 2018 and to 50.7% for the three months ended September 30, 2019, while making significant long-term investments in human capital, research and development, brand-building, and distribution. Our continued investment in and expansion of the Casper brand, distribution, and product offerings will further increase opportunities to acquire new customers and expand relationships with our existing customer base." (State Compl. ¶ 62; Fed. Compl. ¶ 92.) (emphasis omitted).

Given the overlap of alleged misstatements in the State Action and Federal Action, the two courts will necessarily be required to consider the same question: whether plaintiffs have identified materially false statements sufficient to sustain claims for securities law violations.

While the Federal Plaintiff has added Section 10(b) and 20(a) claims in the Amended Complaint (Fed. Compl. ¶¶ 131–145), those fraud claims are based on the very same alleged misstatements in the Registration Statement that are the subject of the Securities Act claims.  In other words, plaintiffs assert two theories of liability for the very same purported misstatements and/or concerning the very same subjects.  Indeed, the Federal Plaintiff identifies only one statement *outside* of the Registration Statement as the basis for its Exchange Act claim, from a March 2020 earnings call.  But that statement merely summarized the IPO and noted Casper's "strong" balance sheet, and thus is duplicative of the above-quoted statements in the Registration Statement that purportedly mischaracterized Casper's cash position.  (Fed. Compl. ¶¶ 99–100) ("We closed our IPO in the first quarter and are pleased to welcome many new shareholders to Casper.  The IPO raised approximately $88 million in net proceeds, putting us in an even stronger competitive position.  We ended the quarter with a cash position of $116 million, providing us with a strong balance sheet and cash to operate in this environment.") (emphasis omitted).  The Exchange Act claims thus do not raise separate or novel issues concerning whether a materially false statement has been identified.

## Argument

### I.    This Court Should Exercise Its Inherent Power, and Apply the "First-Filed Rule," to Stay the Pending Litigation

#### A.    The Applicable Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket," in the interest of "economy of time and effort for itself, for counsel, and for litigants."  *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  "It is within the sound discretion of a district court to enter a stay pending the outcome of independent proceedings that are likely to affect a case on its calendar."  *Trikona Advisors*

*Ltd.* v. *Kai-Lin Chuang*, No. 12-cv-3886, 2013 WL 1182960, at *2 (E.D.N.Y. Mar. 20, 2013).  In determining whether a stay should be granted, courts often consider:  (1) the interests of the plaintiffs in proceeding expeditiously, and any prejudice from delay; (2) the interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.  *Fried* v. *Lehman Bros. Real Estate Assocs. III, LP*, 2012 WL 252139, at *4–5 (S.D.N.Y. Jan. 12, 2012); *see also Kappel* v. *Comfort*, 914 F. Supp. 1056, 1058–59 (S.D.N.Y. 1996).

A stay motion is commonly granted where two actions raise overlapping legal and/or factual issues.  *Trikona Advisors Ltd.,* 2013 WL 1182960 at *2 (holding movant had met its burden to show a stay was warranted, noting "[t]he same causes of action asserted against [defendant] in this court are asserted against [defendant]" in another court); *Fried*, 2012 WL 252139, at *4–5 (granting stay where plaintiff's state and federal securities actions were one another's "counterpart," having legal and factual overlap and arising from "the same series of transactions or events," and noting that "[t]he power to stay a lawsuit is inherent in the Court's prerogative to manage its docket efficiently").

Courts in this Circuit also apply the "first-filed" rule when determining which of two parallel actions should proceed first.  "The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations."  *Cole* v. *Edwards*, 2004 WL 1874970, at *3 (S.D.N.Y. Aug. 13, 2004) (citing *Adam* v. *Jacobs*, 950 F.2d 89, 92 (2d Cir.1991)); *see also First City Nat'l Bank & Trust Co.* v. *Simmons*, 878 F.2d 76, 79 (2d Cir.1989) ("Where there are two competing lawsuits, the first should have priority.") (internal quotations omitted).

10

Time and time again when class actions are filed, courts stay the later-filed actions and allow the first-filed case to be decided in order to avoid duplicative decisions and preserve the resources of all the parties involved. *See, e.g.*, *Santana* v. *Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *5–6 (S.D.N.Y. Nov. 19, 2019) ("A stay of this case will fulfill the doctrine's goals of achieving fairness and comprehensive disposition of litigation while avoiding inconsistent adjudications and duplication of judicial effort and other inefficiencies."); *Woodhams* v. *Pfizer, Inc.*, 2019 WL 1432769, at *2–4 (S.D.N.Y. Mar. 29, 2019) (staying second-filed action based on the same parties, facts, and claims, pending disposition of the class certification motion in the parallel action).

The first-filed rule applies where, as here, the actions are brought on behalf of the same alleged class, "assert the same rights, and seek relief based upon the same facts." *Castillo* v. *Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013). The two lawsuits need not be identical, rather they must be based on the same facts and "the claims and rights raised in the two actions must not differ substantially." *Id.*; *see also Wyler-Wittenberg* v. *MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 247 (E.D.N.Y. 2012) (first-filed rule promotes "the efficient resolution of duplicative litigation").[11]

---

[11]   Courts may decline to follow the first-filed rule where exceptions apply, such as (1) a balance of convenience or (2) special circumstances warrant deviating from the first-filed rule. *Eternal Asia Supply Chain Mgmt. (USA) Corp.* v. *EQD Corp.*, 2012 WL 6186504, at *3–4 (S.D.N.Y. Dec. 12, 2012) (quoting *Emps. Ins. of Wausau* v. *Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)). Neither applies here. Both the State Action and Federal Action are pending in New York, and thus neither forum is more convenient. Nor do any special circumstances exist to warrant departing from the rule.

11

**B.      The Federal Action Should Be Stayed Under the
Court's Inherent Powers and the First-Filed Rule**

Under these legal standards, and pursuant to this Court's inherent powers and the

first-filed rule, the Federal Action should be stayed.

*First,* the Federal Plaintiff will not be prejudiced if the stay is granted.

Defendants seek only a short stay, until the disposition of the motion to dismiss in the State

Action.  Federal Plaintiff cannot identify any prejudice that would result from such a short delay.

To the contrary, allowing the state court to rule first on the overlapping legal issues presented by

these cases will allow this Court to benefit from that prior decision, and thereby streamline the

issues that the parties in this lawsuit need to present in the motion to dismiss.  Moreover, because

the putative class in the State Action and the Federal Action is the same group of investors, the

interests of the putative class will continue to be advanced through the continued litigation of the

pertinent legal issues in the State Action, namely, whether the Registration Statement issued in

Casper's IPO contains material and false statements.

*Second,* the burden on Defendants to simultaneously litigate near-identical

lawsuits supports the stay.  Most of the Defendants are sued only under the '33 Act (only Casper

and the three Officer Defendants are sued under the '34 Act), and thus the two suits are entirely

duplicative as to all of the fourteen Director and Underwriter Defendants.  As to ***all*** Defendants,

the cases present substantial duplication. It is central to the motion to dismiss both the '33 Act

and the '34 Act claims whether Defendants made any false and material statements.[12]   If there

---

[12]   Under Section 11 of the Securities Act, an individual may sue when the registration statement
"contained an untrue statement of a material fact or omitted to state a material fact required to
be stated therein or necessary to make the statements therein not misleading."  11 U.S.C. § 77k.
Similarly, a claim under Rule 10b-5(b) requires a speaker omit an "untrue statement of a
material fact or to omit to state a material fact necessary in order to make the statements made
. . .  not misleading."  17 C.F.R. § 240.10b-5(b).

12

are no false or material statements, all the claims fail under both the '33 Act and '34 Act.  It would be costly and inefficient for Defendants simultaneously to brief those legal questions in two different courts.

*Third,* the interests of the courts plainly support a stay.  Judicial economy cannot be served by asking two different judges to simultaneously consider the same legal issues on a motion to dismiss.  Whatever the outcome of the motion to dismiss in the State Action, the decision will guide the resolution of the Federal Action and potentially narrow the issues that will need to be resolved.  On the other hand, requiring the Defendants to litigate both cases simultaneously both wastes judicial resources and risks inconsistent judgments and rulings, imposing an unwarranted burden on the two courts.

*Fourth*, the interests of non-parties and the public will be protected by the stay because the State Action plaintiffs purport to represent the exact same class as the Federal Action.

Finally, the Federal Plaintiff is wrong that the assertion of '34 Act claims changes the analysis.  Federal Plaintiff's late addition of '34 Act claims—a defensive tactic that they undertook in an attempt to differentiate their case—does nothing to undermine the judicial efficiency supported by a stay.  Both '33 Act and '34 Act claims require plaintiffs to plead and prove material and false statements.  As the New York Supreme Court recently held in a similar situation, the mere inclusion of some additional claims in the Federal Action, particularly when the claims are based on the same alleged misstatements, is insufficient to untether the federal action from the state action.  *See, e.g.*, *In re NIO, Inc. Sec. Litig.*, No. 0653422/2019 (N.Y. Sup. Ct. Aug. 21, 2020) (NYSCEF 102) (staying the state action even when the state and federal cases

13

involved different misstatements and some different parties).  The key question, *i.e.*, whether

Casper made false or misleading statements, is thus the same in both actions.

For these reasons, the Court should grant a temporary stay of the Federal Action

pending disposition of the motion to dismiss in state court.  Once that decision is issued, the

parties can meet and confer to discuss the most efficient path forward, if any, rather than

engaging in duplicative motion practice now, which risks inconsistent judgments and an

ineffective use of judicial resources.

**II.    Even Under the *Colorado River* Factors, the Court
Should Stay the Pending Litigation**

In the present motion, Defendants seek only a temporary stay pending disposition

of the motion to dismiss in New York state court.  Defendants are not asking this Court at this

time to permanently dismiss this case or abstain in favor of the state court.  Given that

Defendants' request is simply for a temporary stay, this motion does not implicate the factors

articulated in *Colorado River Water Conserv. Dist.* v. *United States,* 424 U.S. 800 (1976), which

address federal court abstention or dismissal in favor of a parallel state action.  *See Names for

Dames* v. *Gimbel*, No. 88-CV-3692, 1989 WL 82417, at *3 (S.D.N.Y. July 19, 1989) (granting a

stay pending the outcome of a New Jersey action but explicitly declining to apply the *Colorado

River* factors).  In similar circumstances, courts have issued stays under their inherent powers

without addressing the *Colorado River* factors.  *See, e.g.*, *Glenclova Inv. Co.* v. *Trans-Res., Inc.*,

874 F. Supp. 2d 292, 313–14 (S.D.N.Y. 2012) (issuing a "temporary stay of federal proceedings

in favor of state court proceedings" without abstaining under *Colorado River*); *Malcolm* v.

*Honeoye Falls-Lima Educ. Assoc.*, No. 08-CV-6551, 2011 WL 13359375, at *1 (W.D.N.Y. Aug.

3, 2011) (granting temporary motion to stay pending parties' briefing on the impact of the order

14

of dismissal of the parallel action in New York State Supreme Court without mention of *Colorado River*).

Even if this Court were to consider the requested stay under *Colorado River*, a temporary stay is warranted. *Colorado River* allows a federal court to refrain from exercising jurisdiction when "parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagra Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100–01 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817–18).

The *Colorado River* doctrine supports a stay where, as here, the federal and state suits are parallel, meaning "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagra Mohawk Power Corp.*, 673 F.3d at 100 (internal quotations omitted); *see also Garcia* v. *Tamir*, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999). As discussed above, *supra* Section D., the cases are near duplicates of each other, involving the same parties, the same alleged misstatements, and the same theories of liability. Even though the Federal Action purports to add a Section 10(b), the main issue for the motion to dismiss will be whether there were any misstatements in the Registration Statement. *Clark* v. *Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004) ("Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action."); *Nakash* v. *Marciano*, 882 F.2d 1411, 1416–17 (9th Cir. 1989) (finding the cases are parallel because they are "substantially similar" since "[a]ll of the[] disputes concern how the respective parties have conducted themselves since" purchasing a share of a company).

The *Colorado River* factors are:

15

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal actions will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Gen. Star Int'l Indemnity, Ltd.* v. *Chase Manhattan Bank*, 57 F. Appx. 892, 893 (2d Cir. 2003)

(quotations omitted).  No single factor is dispositive.  *Royal and Sun Alliance Ins. Co. of Canada*

v. *Century Int'l Arms, Inc.*, 466 F.3d 88, 93–94 (2d Cir. 2006).

As applied here, there is no property in dispute (factor one), and both the state and

federal courts are equally convenient (factor two).  The other factors weigh in favor of a stay.

Under the third factor, a stay will avoid piecemeal litigation, which, although not

dispositive, is by far "the most important factor."  *First Keystone Consultants* v. *Schlesinger*, 862

F. Supp. 2d 170, 188 (E.D.N.Y. 2012).  As described above, the exact same statements are

alleged to be misleading in the state and federal actions.  (*See supra* Section D.)  Without a

federal stay, both this court and the state court will be assessing whether the registration

statement contained any misstatements—"duplicating the amount of judicial resources required

to reach a resolution."  *Clark*, 376 F.3d at 686–87.  Courts recognize there is "plainly

inconvenience in having to litigate actively in both state and federal courts at the same time,"

thus this weighs in favor of a stay.  *Phillips*, 252 F. Supp. 3d at 299; *Colony Ins. Co.* v. *Danica*

*Grp.* LLC, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) ("[F]orcing [Defendant] to litigate

in two courts would be unduly burdensome to [Defendant] . . . Further, forcing two courts to

adjudicate [the same issue] would be a waste of judicial resources."); *Lefkowitz* v. *Bank of N.Y.*,

676 F. Supp. 2d 229, 275–76 (S.D.N.Y. 2009) (same).

16

Under the fourth factor, this is the third-filed case.  Multiple state plaintiffs filed their actions in state court before the Federal Plaintiff filed.  *See supra* Section C.

Under the fifth and sixth factors, the state procedures are adequate to protect the plaintiff's rights.  State courts have been given concurrent jurisdiction over Section 11 claims, which would not have occurred if Congress "feared that these courts would inadequately protect plaintiff's rights." *Romine* v. *Compuserve Corp.*, 160 F.3d 337, 342 (6th Cir. 1989).  Similarly, while the claims are brought under federal law, given the current jurisdiction, "[t]he source-of-law factor thus has less significance." *Id.* (internal citation omitted).

The *Colorado River* factors thus support a stay.  Additionally, Federal Plaintiff's attempt to advance the Federal Action by adding '34 Act claims is the type of tactical maneuvering that courts reject.  *Bristol Heights Assocs., LLC* v. *Chicago Title Ins. Co.*, 2011 WL 3930299, at *3 (D. Conn. Mar. 30, 2011) (dismissing under *Colorado River* abstention and leaving [plaintiff] to its remedies in state court, "[g]iven the need to avoid encouraging the tactical maneuvering engaged in here, and the need to show appropriate deference to the state courts"); *Telesco* v. *Telesco Fuel & Masons' Materials, Inc.*, 765 F. 2d 356, 363–64 (2d Cir. 1985) (affirming dismissal under *Colorado River* abstention, because the cases involved the same parties and causes of action and the "hostile history of the case," and "the conservation of judicial resources" made the federal action "fall[] within the framework of the exceptional circumstances test"); *Lawrence Moskowitz CLU Ltd.* v. *ALP, Inc.*, 2020 WL 1503558, at *9–10 (S.D.N.Y. Mar. 30, 2020) (finding abstention was warranted under *Colorado River* because, in addition to balancing of other factors, action was "vexatious or reactive" because plaintiffs "sought to avoid the state forum that is properly hearing the State Court Action").

17

## Conclusion

For these reasons, Defendants respectfully request that the Court issue a temporary stay of this action pending the disposition of Defendants' motion to dismiss in the State Action.

Dated: December 1, 2020

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

BY:
  s/ Audra J. Soloway
Audra J. Soloway
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
Email: asoloway@paulweiss.com
*Attorney for Casper Defendants*

WILLKIE FARR & GALLAGHER LLP
Todd G. Cosenza
Charles Dean Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8677
Fax: (212) 728-9677
Email: tcosenza@willkie.com
        ccording@willkie.com
*Attorneys for Underwriter Defendants*

18