**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT LEMATTA, individually and on behalf of all others similarly situated, | Case No: 1:20-cv-02744 |
| Plaintiff, | **CLASS ACTION** |
| v. | Honorable Margo K. Brodie |
| CASPER SLEEP INC. et al., | Honorable Robert M. Levy |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO ENFORCE THE STIPULATION OF SETTLEMENT**

After Defendant Casper Sleep Inc. ("Casper") and Lead Plaintiff Saleh Doron Gahtan ("Plaintiff") entered into a Stipulation of Settlement ("Stipulation"), ECF No. 80, to settle this action, Casper encountered financial difficulties, causing it to miss the first two of six installment payments. Casper reached out to Plaintiff after the first missed payment—before Plaintiff raised any concern—and communicated that it is working in good faith to resolve the situation. Plaintiff opted to move to enforce the Stipulation, arguing that Casper's two missed payments amounted to material breach of the Stipulation.

Plaintiff's scant analysis of the supposed material breach, however, does not withstand scrutiny. *First*, the Stipulation's plain terms, which do not provide for a specific outcome if an installment payment is missed, do not support a reading of the contract that the installment payment provision was intended to be a material term. *Second*, even when seen through the lens of various factors that courts use to assess whether a material breach has occurred, Plaintiff's argument collapses. This analysis considers, among other things, the extent to which the injured party will be deprived of the benefit which he reasonably expected. Plaintiff cannot claim to be injured after two missed payments, where the Stipulation provides that the payments will be kept in an Escrow Account until the designated Effective Date. As of now, Plaintiff does not and cannot show material breach of the Stipulation.

What is more, Plaintiff's requested remedies are inappropriate. At bottom, Plaintiff is seeking missed payments of money pursuant to a supposed material breach of contract. But in terms of remedies, Plaintiff improperly seeks specific performance via an order (1) requiring Casper to comply with its future payment obligations under the Stipulation; (2) requiring Casper to remit to the Settlement Fund the missed payments within 24 hours; and (3) awarding attorneys' fees to Plaintiff. Specific performance is appropriate for a situation involving irreparable harm,

1

but that is plainly not the case here, nor does Plaintiff argue that he will suffer any absent specific performance.  The first request is also problematic because it asks the Court to proactively police a party's contractual performance, which courts are reluctant to do.  Further, the second request is improper in requiring Casper to remit the missed payments within 24 hours, because it is a request for specific performance which would result in harm to Casper that would vastly outweigh the harm to Plaintiff from denying this relief.

Finally, Plaintiff is entitled to attorneys' fees only if he prevails on his motion to enforce the Stipulation ("Motion"), which he cannot for reasons detailed below.  Plaintiff also failed to submit any billing records to support his request for attorneys' fees, as required by Second Circuit precedent, and the request should be denied for that independent reason.

## I.    FACTUAL BACKGROUND

### A.    The Parties Entered into a Stipulation of Settlement.

On June 6, 2024, Plaintiff and Defendants entered into the Stipulation to settle the above-captioned action.  In the Stipulation, Casper agreed to pay a total of $3,000,000 (defined as the "Settlement Amount" in the agreement) to fund the Settlement Fund according to a schedule of six transfers of $500,000.  Stipulation II.A.  The first transfer was to occur within seven calendar days following preliminary approval and the five subsequent transfers were to occur at 20-day intervals.  *Id*.

The Stipulation also provides that Casper agrees to transfer payments towards the Settlement Amount by wire to an interest-bearing Escrow Account in a financial institution designated by Plaintiff's counsel that would act as the Escrow Agent.  Stipulation II.A.  Prior to the "Effective Date," the Escrow Agent is not permitted to disburse the Settlement Fund except as provided in the Stipulation, by order of the Court, or with the prior written agreement of Class Counsel and Defendants' counsel.  Stipulation III.D.

2

Per the Stipulation, the Effective Date of the Settlement is deemed to occur when six conditions are satisfied, including that "Defendants shall have timely funded and/or caused to be funded the Settlement Fund with the Settlement Amount." Stipulation X.A.3. The relevant condition here is the timely funding of the Settlement Fund, *i.e.*, Casper's payment of the full $3,000,000 Settlement Amount, and not the payment of any one of the six installment payments outlined in Stipulation II.A. "If the conditions specified in [Stipulation X.A] are not met, then this Stipulation shall be canceled and terminated, unless Class Counsel and Defendants' counsel mutually agree in writing to proceed with the Settlement." Stipulation X.C. Similarly, "[i]f either (a) the Effective Date does not occur, (b) this Stipulation is canceled or terminated pursuant to its terms, or (c) this Stipulation does not become final for any reason, all of the Parties to this Stipulation shall be deemed to have reverted to their respective status as of April 24, 2024." Stipulation X.F. The Stipulation does not provide any specific outcome if Casper misses any installment payment.

Notably, Plaintiff does not claim that the Stipulation has been terminated as a result of the two missed payments, despite arguing that the agreement has been materially breached. Casper is, of course, similarly committed to continuing forward with the Settlement and adhering to the Stipulation.

The Stipulation further provides that "[i]n any action to enforce the terms of this Stipulation, the prevailing party shall be entitled to reasonable attorneys' fees and costs." Stipulation XII.L.

### B.    The Court Issued a Preliminary Approval Order Subject to Further Consideration at a Settlement Hearing.

On July 18, 2024, the Court issued an Order preliminarily approving the Settlement, subject to further consideration at a Settlement Hearing pursuant to Federal Rule of Civil Procedure 23(2),

scheduled for November 15, 2025. ECF No. 82 ¶ 6. According to the Stipulation, once preliminary approval was granted, the first installment was due a week later, on July 25, 2024; the second installment 20 days after that, on August 14, 2024; and the remaining installments were to follow at 20-day intervals on September 3, September 23, October 13, and November 3, 2024.

### C.    Casper Fully Intends to Consummate the Settlement.

Casper always intended—and still intends—to consummate the Settlement and has taken steps to comply with its related obligations. For example, Casper timely sent out Notices regarding the Settlement as required under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715. Following preliminary approval by the Court, Casper also provided transfer records with information regarding acquirers of Casper securities during the relevant period to the claims administrator. Casper planned to make the first Settlement payment according to the original schedule and requested wire instructions and W-9 forms from Plaintiff's counsel in order to do so.

### D.    Casper Experienced Financial Difficulties in July 2024.

Towards the end of July 2024, Casper encountered financial difficulties. As a result, Casper was not in a position to transfer the first installment payment on July 25, 2024, or the second one on August 14, 2024. After the first missed payment (and before Plaintiff had even noticed the missed payment), Casper reached out and informed Plaintiff of the challenges it was facing and reiterated that it was working in good faith to resolve the situation.

On August 20, 2024, Plaintiff served its motion to enforce the Stipulation. Plaintiff argued that Casper materially breached the Stipulation by missing the July 25 and August 14 payments and requested that the Court (1) require Casper to comply with its payment obligations under the Stipulation; (2) require Casper to remit to the Settlement Fund the two missed payments of $500,000 within 24 hours; and (3) award attorneys' fees to Plaintiff. Plaintiff's Opening Brief ("Br.") at 1, 4–5.

## II.    PLAINTIFF HAS NOT SHOWN A MATERIAL BREACH OF THE STIPULATION.

Plaintiff has failed to show that Casper's delay in funding two of the six settlement installment payments resulted in material breach of the Stipulation under either (1) the language of the Stipulation itself or (2) traditional factors considered by courts in assessing whether a material breach has occurred.

*First*, Plaintiff makes no showing that failure to make two installment payments under the Stipulation amounts to a material breach based on the Stipulation's terms.  Under New York law, a settlement agreement is construed according to general principles of contract law.  *See Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).[1]  A material breach is one that goes to the essence of the contract, that is, "the breach substantially defeats the contract's purpose or the breach is such that upon a reasonable interpretation of the contract the parties considered the breach as vital to the existence of the contract."  *Williston on Contracts* § 63:3 (4th ed.).

Under the plain terms of the Stipulation, it is evident that Casper is not in material breach. The Stipulation's language suggests that the installment payment provision is a not material term; rather, its focus is the funding of the Settlement Fund with the Settlement Amount of $3,000,000. For example, the Stipulation states in relevant part that "[i]n consideration of the full and final release, settlement and discharge of all Released Plaintiffs' Claims, exchange for settlement and release of all Claims, Casper shall provide cash compensation of $3,000,000 to establish the Settlement Fund for the benefit of the Class[.]"  Stipulation II.A.  Defendants are also required to have "timely funded and/or caused to be funded the Settlement Fund with the Settlement Amount," where the Settlement Amount is defined in the agreement as the total sum of $3,000,000.

---

[1]    Unless otherwise noted, quotation marks and internal citations have been omitted throughout this Brief.

5

Stipulation X.A.3 and I.DD.[2]  If this condition is not met, "then this Stipulation shall be canceled and terminated, unless Class Counsel and Defendants' counsel mutually agree in writing to proceed with the Settlement."  Stipulation X.C.

Instead of contending with the Stipulation's actual language, Plaintiff cites cases that are readily distinguishable from the facts at issue here.  Specifically, Plaintiff cites to cases involving agreements that expressly contemplate certain consequences for failure to pay an installment.  *See Essar Steel Algoma v. S. Coal Sales Corp.*, 2022 WL 11405807, at *1 (S.D.N.Y. Oct. 18, 2022) (settlement agreement at issue provided that any one or more "[e]vents of [d]efault" would accelerate the remaining settlement balance); *Barbecho v. Matrat LLC*, 2021 WL 3862662, at *3 (S.D.N.Y. Aug. 30, 2021) (settlement agreement at issue specified that failure to make an installment payment would result in default, which in turn triggered cure period); *Gomez v. Terri Vegetarian LLC*, 2021 WL 2349509, at *2 (S.D.N.Y. June 9, 2021) (settlement agreement at issue stated that failure to make an installment payment resulted in late penalty and if uncured, full outstanding balance would be accelerated); *Tendilla v. 1465 Espresso Bar LLC*, 2021 WL 2209873, at *2–3 (S.D.N.Y. June 1, 2021) (settlement agreement at issue contemplated a 10-day cure period and liquidated damages pursuant to any failed installment payment).

Unlike Plaintiff's cited cases, the Stipulation is silent on what occurs if any single installment payment is missed.  The Stipulation also does not state that a missed installment payment, regardless of whether the full Settlement Amount is ultimately paid into the Settlement

---

[2]    In addition, nowhere in the Stipulation does it state that "time is of the essence" with respect to each installment payment.  *Compare Aeolus Down, Inc. v. Credit Suisse Int'l*, 2011 WL 5570062 at *3 (S.D.N.Y. Nov. 16, 2011) ("The facts support a plausible inference that the 25–day period was not a material part of the agreed exchange. No clause states that time is of the essence in execution of the assignment agreement, and that meaning cannot be inferred from the mere presence of the condition in the contract."), *with Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2013 WL 227546, at *2 (S.D.N.Y. Jan. 22, 2013) ("As the Settlement made clear that time was of the essence in all cases, ATA's failure to make the first two required payments on time and in full constituted separate breaches of the Settlement.").

Fund, will result in a material breach of the contract, or lead to consequences such as an entry of judgment, acceleration of payments, interest penalty, and/or liquidated damages. In sum, Plaintiff's argument that the two missed payments amount to material breach is not supported by the Stipulation's plain terms.

*Second*, even when applying the traditional factors that courts use for assessing whether a material breach has occurred, Plaintiff has failed to make a showing of material breach. In considering whether a failure to comply with the strict terms of an agreement constitutes a material breach, New York courts evaluate "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected[,] (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived, (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture, (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances, [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Fitzpatrick v. Am. Int'l Grp., Inc.*, 2013 WL 709048, at *20 (S.D.N.Y. Feb. 26, 2013).

To be clear, Plaintiff fails to apply, much less mention, these factors in his Motion—but even if he had referenced the factors for materiality, he would not be able to meet them. *See* Br. Section II.B. For instance, in applying the first factor listed above regarding the extent to which the injured party will be deprived of the benefit which he reasonably expected, Plaintiff has failed to show actual deprivation or prejudice at this point in time with regard to the two missed payments. Per the Stipulation, "Authorized Claimants"[3] are not permitted to receive Settlement

---

[3] "Authorized Claimant" means any Class Member who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of the Stipulation, the exhibits thereto, and any order of the Court. Stipulation I.B.

Fund disbursements from the Escrow Agent prior to the Effective Date, which occurs once the Settlement Amount is fully funded by November 3, 2024, among other things. Stipulation III.D, VIII.I. And while Casper regrets the challenges it has faced in attempting to fund the two initial installment payments, Casper intends to meet its obligations regarding the Settlement Amount as soon as feasible. Plaintiff's expectation is to be able to proceed with the Final Approval Hearing scheduled for November 15, and if Casper fully funds the Settlement Fund as soon as it is able to address its ongoing liquidity challenges, then the delay in initial installment payments is unlikely to impinge on that. As such, Casper's missing the July 25 and August 14 payments cannot as of now be said to substantially defeat the contract's purpose, nor will that deprive Plaintiff of the consideration it reasonably expects to receive from the agreement by the end of the payment schedule.

Moreover, under the last factor of the materiality analysis, Casper's steadfast efforts to resolve its financial difficulties, and prior track record of good-faith dealings with Plaintiff, comport with standards of good faith and fair dealing. Indeed, Casper reached out proactively to notify Plaintiff of the first missed payment and to inform Plaintiff of Casper's situation. Accordingly, Plaintiff has failed to meet its burden in showing Casper materially breached the Stipulation.

## III.    PLAINTIFF IS NOT ENTITLED TO HIS REQUESTED RELIEF.

Despite arguing that a supposed material breach of contract for missed payments of money has occurred, Plaintiff seeks two forms of specific performance: an order (1) mandating Casper to comply with its payment obligations under the Stipulation; and (2) requiring Casper to remit to the Settlement Fund the two missed payments of $500,000 within 24 hours. As explained above, Plaintiff failed to show material breach of the Stipulation resulting from the missed July 25 and

8

August 14 payments, and for that reason, is not entitled to his requested relief. His requests of the Court are inappropriate for the additional reasons below.

### A.    Plaintiff is Not Entitled to an Order on Casper's Adherence to Future Installment Payments.

Plaintiff first requests that the Court require Casper to comply with its *future* payment obligations under the Stipulation, Br. at 1, 6, speculating that "[f]urther defaults are likely absent Court intervention," Br. at 4. This requested relief is inappropriate and premature at this juncture.

*First,* to the extent Plaintiff seeks specific performance of future settlement payments, such relief should not be granted as courts of equity are generally reluctant to engage in the constant and continued supervision required in order to enforce a party's future adherence to the terms of a contract. *See* 96 N.Y. Jur. 2d Specific Performance § 44; *see also Grossman v. Wegman's Food Markets, Inc.*, 350 N.Y.S.2d 484, 485–8¬6 (1973) ("Contracts which require the performance of varied and continuous acts . . . will not, as a general rule, be enforced by courts of equity, because the execution of the decree would require such constant superintendence as to make judicial control a matter of extreme difficulty.").

*Second,* to the extent Plaintiff seeks assurance of future payments on the basis of anticipatory breach, New York does not apply the doctrine of anticipatory breach where there is an alleged repudiation of an executory contract for the payment of money, in installments or otherwise. *Brauner v. Provident Life & Cas. Ins. Co.*, 1998 WL 812612, at *2 (E.D.N.Y. Mar. 24, 1998); *McCann v. John Hancock Mut. Life Ins. Co.*, 264 N.Y.S.2d 728, 729 (Sup. Ct. 1964). Even assuming that an action based on anticipatory breach could be maintained in New York, no allegation of repudiation has been made by Plaintiff in his Motion, nor can repudiation be inferred solely from Casper's failure to pay two installment payments. There is therefore no basis to order Plaintiff's request for future relief on the basis of anticipatory breach.

9

*Third*, if Plaintiff is essentially seeking a lump-sum money judgment or a declaration to that effect, New York courts have held in similar situations that plaintiff is *not* entitled to such relief with respect to future installments, as a result of missed partial payments. *Gordon v. Cont'l Cas. Co.*, 457 N.Y.S.2d 844, 846 (1983). Moreover, to the extent Plaintiff is entitled to an order enforcing the past accrued installments, Plaintiff's rights as to the future installments "will not merge in the judgment so as to permit [] enforcement in the absence of separate further judicial proceedings to establish future breaches . . . ." *Id*. If Casper misses any further installment payment, such default should be evaluated on the merits at the time of the supposed breach. Therefore, Plaintiff's request that the Court require Casper to adhere to the agreed-upon payment schedule, prior to the time that payment issues ripen or materialize, is inappropriate at this stage and should be denied.

B.    **The Court Should Deny Plaintiff's Request for an Order that Casper Cure its Default within 24 Hours.**

Plaintiff's request to require Casper to remit to the Settlement Fund the two missed payments of $500,000 within 24 hours is an extreme remedy that goes beyond a simple request for damages—and is in essence a request for specific performance. But Plaintiff does not (and could not) argue that he will be irreparably harmed if the Court does not order Casper to remit the two missed payments of money. *See Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 375 F. App'x 109, 112 (2d Cir. 2010) (noting a plaintiff seeking specific performance must show irreparable harm). Moreover, this requested relief would result in harm to Casper that would vastly outweigh the harm to Plaintiff from denying this relief, and the Court should further deny Plaintiff's request on this ground. *See, e.g.*, *Van Wagner Advert. Corp. v. S & M Enterprises*, 492 N.E.2d 756, 761 (1986) ("It is well settled that the imposition of an equitable remedy must not itself work an inequity, and that specific performance should not be an undue hardship.").

10

Here, Casper has been experiencing financial difficulties and has not been in a position to transfer its first two installment payments. In light of Casper's financial challenges, which Casper communicated to Plaintiff alongside assurances of Casper's good-faith work to resolve the situation, an order that Casper remit the missed payments within 24 hours would result in a "harsh" remedy, especially where there are multiple installment payments still to be made until November 2024 (which Plaintiff cannot access in the meantime). *See id.* (noting that a court of equity should not grant an award which "would be disproportionate in its harm to defendant and its assistance to plaintiff"); *Coleman v. Coker*, 888 N.Y.S.2d 535, 537 (2009). For these reasons, the Court should deny Plaintiff's second requested form of relief.

## IV.     PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES.

Finally, Plaintiff has not made the requisite showing for an award of attorneys' fees. "Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." *Filo Promotions, Inc. v. Bathtub Gins*, Inc., 311 F. Supp. 3d 645, 649 (S.D.N.Y. 2018); *see also Global Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, 2020 WL 9762874, at *6 (S.D.N.Y. May 29, 2020) ("To aid in the court's analysis, a fee application should be supported by contemporaneous time records relaying the rates charged and hours worked by each attorney.").

Plaintiff's counsel has failed to submit any billing time records. *Green Mountain Holdings (Cayman) Ltd. v. Eddington Link, LLC*, 2021 WL 7710107, at *4 n.4 (E.D.N.Y. Dec. 31, 2021) ("Even if Plaintiff had properly requested attorney's fees in this default judgment action, an award of attorney's fees would not be appropriate because Plaintiff did not submit any billing records."), *report and recommendation adopted*, 2022 WL 903062 (E.D.N.Y. Mar. 28, 2022); *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey*, 2022 WL 1422841, at *10 (E.D.N.Y. Mar.

11

24, 2022) ("[P]laintiff has provided no documentation to support any request for attorneys' fees. Therefore, plaintiff should not be awarded its attorneys' fees."), *report and recommendation adopted*, 2022 WL 2390989 (E.D.N.Y. July 1, 2022); Br. at 6.  As such, the Court should deny Plaintiff's request for attorneys' fees.

<u>**CONCLUSION**</u>

For the foregoing reasons, Casper respectfully submits that the Court deny Plaintiff's Motion to Enforce the Stipulation of Settlement and award Casper attorneys' fees as provided in the Stipulation.

Dated: September 3, 2024

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

/s/ *Stefan Atkinson*
Stefan Atkinson
Jenny Lee
Hannah Geis
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 390-4623
Facsimile: (212) 446-4900
Email:  stefan.atkinson@kirkland.com
        jenny.lee@kirkland.com
        hannah.geis@kirkland.com

*Counsel for Defendants Casper Sleep Inc., Anthony Florence, Diane Irvine, Karen Katz, Philip Krim, Jack Lazar, Benjamin Lerer, Gregory Macfarlane, Neil Parikh, and Dani Reiss.*