**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT LEMATTA, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CASPER   SLEEP   INC.,  et al.,<br><br>    Defendants. | Case No: 1:20-cv-02744<br><br>**<u>CLASS ACTION</u>**<br><br>Honorable Margo K. Brodie<br><br>Honorable Robert M. Levy |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF**
**<u>LITIGATION EXPENSES, AND COMPENSATORY AWARD FOR PLAINTIFF</u>**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ................................................................................................................1

II.    ARGUMENT .......................................................................................................................4

    A.  Lead Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund .................................................................................................................4

    B.  The Court Should Award a Reasonable Percentage of the Common Fund...................5

    C.  Relevant Factors Confirm that the Requested Fee Is Reasonable ...............................6

        1.  The Time and Labor Expended by Lead Counsel Support the Requested Fee...............................................................................................................7

        2.  The Magnitude and Complexity of the Action Support the Requested Fee...............................................................................................................9

        3.  The Risks of the Litigation Support the Requested Fee ................................9

        4.  The Settling Parties Were Represented by Experienced, High-Caliber Counsel ......................................................................................................12

        5.  The Requested Fee in Relation to the Settlement is Fair and Reasonable ..................................................................................................14

        6.  Public Policy Considerations Favor the Fee Request .................................15

        7.  A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable..........................................................................................16

    D.  Lead Counsel Should Be Reimbursed for its Litigation Expenses.............................18

    E.  The Proposed Compensatory Award to Plaintiff is Reasonable.................................19

III.    CONCLUSION..................................................................................................................20

CERTIFICATE OF SERVICE ...................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018)................................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)...........................................................................................................15, 16

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...............................................................................................12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)................................................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)........................................................................................................4, 5, 16

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) ......................................................................................15

*Blum v. Stenson*,
  465 U.S. 886 (1984)......................................................................................................5, 16, 17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................................................4

*Bryant v. Avado Brands, Inc.*,
  100 F. Supp. 2d 1368 (M.D. Ga. 2000) ............................................................................10, 11

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ..............................................................................................11

*Burns v. FalconStor Software, Inc.*,
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...............2, 13, 18, 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).....................................................................................................13

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014).............4, 9, 10, 14

*Collins v. Olin Corp.*,
  No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010)......................................15

ii

*Eltman v. Grandma Lee's, Inc.*,
    No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ...............................................13

*Fishoff v. Coty Inc.*,
    No. 09 CIV. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)....................................11

*Fishoff v. Coty Inc.*,
    634 F.3d 647 (2d Cir. 2011)...................................................................................................11

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)..................................17

*Gay v. Tri-Wire Eng'g Solutions. Inc.*,
    No. 12 CV 2231, 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)....................................................15

*Gierlinger v. Gleason*,
    160 F.3d 858 (2d Cir. 1998)...................................................................................................17

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..............................................................................4, 5, 6, 9, 12, 13

*Gong v. Neptune Wellness Sols. Inc.*,
    No. 221CV01386ENVARL, 2023 WL 5793557 (E.D.N.Y. Sept. 7, 2023)..............................1

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................2, 5, 18

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) ...............................................................................................5

*Hicks v. Stanley*,
    No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................16, 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ...............................................................................................12

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................6, 10

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................10

*In re AOL Time Warner, Inc. Sec.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006).............................17

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................................................12, 17

iii

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005)..................................13

*In re China Sunergy Sec. Litig.*,
  No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................13

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)................................14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................19

*In re Interpublic Sec. Litig.*,
  No. 02 CIV.6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...................................5

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................17

*In re Med. X-Ray Film Antitrust Litig.*,
  No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).................................................15

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................................14, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ....................................................................................15

*In re PPDAI Grp. Inc. Sec. Litig.*,
  No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022).................1, 5, 8, 18, 19

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) .........................................................................................10

*In re Sequans Commc'ns  S.A. Sec. Litig.*,
  Case No. 17-cv-04665-FB-SJB, ECF 73 (S.D.N.Y. Sept. 28, 2020) ...................................1, 2

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..............................................9

iv

*In re Sterling & Foster, Inc. Sec. Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...................................................................18

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .................................5

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...................................................................17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) .....................................................................16

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................6

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................13, 14, 16

*In re WorldCom, Inc. Sec. Litig.*,
   388 Supp. 2d 319 (S.D.N.Y. 2005)......................................................................16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................10

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000)....................................................................11

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)...........................................................................11

*Khait v. Whirlpool Corp.*,
   No. 06 CV 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...........................................15

*Kindle v. Dejana*,
   308 F. Supp. 3d 698 (E.D.N.Y. 2018) ...............................................................19, 20

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .................................19

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)...........................................................................17

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................4, 16

*Martinek v. Amtrust Fin. Servs., Inc.*,
   No. 19 CIV 8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) .............................19

v

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...............................................................................10

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989)..............................................................................................16, 17

*Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*,
No. 06 CV 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009).............................15

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
818 F.2d 278 (2d Cir. 1987)..................................................................................18

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) .............................................................................12

*Rodriquez v. It's Just Lunch Int'l*,
No. 07-CV-09227 (SN), 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) .............................14, 19

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999)..................................................................................17

*Silverberg v. People's Bank*,
23 F. App'x 46 (2d Cir. 2001) ..............................................................................15

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 1:05-CV-720 S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ......................15

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)..............................9, 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..............................................................................................16

## Rules & Regulations

Fed. R. Civ. P. 23(e) .................................................................................................1

## Statutes

15 U.S.C. §78u-4(a)(4) ............................................................................................19

15 U.S.C. §78u-4(a)(6) ............................................................................................6

Civil Justice Reform Act of 1996 ............................................................................17

Private Securities Litigation Reform Act of 1995 ...................................................6, 19

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Lead Plaintiff Saleh Doron Gahtan ("Plaintiff"), on behalf of himself and the Class, and Lead Counsel Pomerantz LLP ("Lead Counsel")[1] respectfully submit this memorandum in support of their motion for (i) an award of attorneys' fees of one-third (33 1/3%) of the Settlement Fund plus accrued interest; (ii) reimbursement of necessary and reasonable litigation expenses of $233,242.40; and (iii) a compensatory award of $15,000 to Plaintiff.

## I.    INTRODUCTION

Lead Counsel and Plaintiff have secured a very favorable $3,000,000 cash Settlement for the benefit of the Class to resolve this securities class action against Defendants Casper Sleep, Inc. ("Casper" or "the Company"), Philip Krim, Gregory MacFarlane, Neil Parikh, Diane Irvine, Anthony Florence, Jack Lazar, Benjamin Lerer, Karen Katz, Dani Reiss, Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Jefferies, LLC, BofA Securities, Inc., UBS Securities LLC, Citigroup Global Markets, Inc., Piper Sandler & Co., and Guggenheim Securities, LLC (collectively, "Defendants") after more than four years of litigation. Lead Counsel, who have received no payment to date, now seek attorneys' fees of one-third of the Settlement Amount and interest accrued thereon while in escrow. Lead Counsel and their professionals have spent, in the aggregate, more than 2,631 hours prosecuting this case against Defendants, with a lodestar of $1,864,972.00.  Fees in this percentage are regularly approved by courts in this Circuit. *See*, *e.g.*, *Gong v. Neptune Wellness Sols. Inc.*, No. 221CV01386ENVARL, 2023 WL 5793557, at *2 (E.D.N.Y. Sept. 7, 2023) (awarding one-third fees plus interest); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *16–17 (E.D.N.Y. Jan. 21, 2022) (same); *In re*

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement, fully executed on December 6, 2022 (the "Stipulation"), filed concurrently herewith.

*Sequans Commc'ns S.A. Sec. Litig.*, Case No. 17-cv-04665-FB-SJB, ECF 73 (S.D.N.Y. Sept. 28, 2020) (same); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *15-21 (S.D.N.Y. Dec. 18, 2019) (same) (collecting cases); *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *8-10 (E.D.N.Y. Apr. 11, 2014) (same) (collecting cases). Plaintiff has determined that request to be reasonable and consistent with his retainer agreement. *See* Declaration of Saleh Doron Gahtan ("Gahtan Decl."), attached as Exhibit 1 to Declaration of Joshua B. Silverman ("Silverman Decl.") filed herewith.

The time and labor Lead Counsel expended in litigation this Action for over four years included: (a) conducting a lengthy investigation by analyzing publicly available information regarding Defendants, including SEC filings, newspaper articles, analyst reports, press releases, stock price movements, and earnings conference call transcripts, and interviewing former employees of Casper; (b) drafting a detailed and viable Amended Complaint; (c) consulting with a damages expert to evaluate recoverable losses; (d) researching and opposing Defendants' motion to dismiss; (g) drafting a mediation statement and participating in a full-day mediation in January 2023; (h) exchanging initial disclosures; (i) negotiating a protective order and ESI protocol; (j) issuing requests for production of documents and interrogatories to Defendants, and reviewing responses thereto; (j) issuing numerous third-party subpoenas and reviewing responses thereto; (k) negotiating discovery disputes with Defendants and subpoena recipients; (l) reviewing and analyzing over 258,000 pages of documents; (m) taking or participating in 11 depositions; (n) engaging an econometric expert to assess market efficiency and classwide damage methodologies; (o) researching and drafting a motion for class certification; (p) preparing a supplemental mediation statement; (q) participating in a second mediation in April 2024; (r) preparing a motion for preliminary approval; and (s) attempting to resolve informally deficiencies in Settlement

2

funding, and thereafter moving to enforce the Settlement.

Strategic Claims Services ("SCS"), the Claims Administrator, provided individual notice of the Settlement via e-mail, or where e-mail could not be identified or was returned as undeliverable, first-class mail to each member of the Class whose address was reasonably ascertainable, and caused publication of the Summary Notice via *Globe Newswire* on August 13, 2024. *See* Declaration of Josephine Bravata ("Bravata Decl."), attached as Exhibit 2 to Silverman Decl., ¶¶46-50. The Notice amply described the terms of the Settlement, including: (a) the nature, history, and progress of the litigation; (b) the proposed Settlement; (c) the final approval hearing; (d) the process to opt out of, or object to, the Settlement; (e) the plan for allocating the settlement among class members; (f) the maximum amount of fees and expenses to be sought by counsel, and the maximum amount of compensatory awards to be sought for Plaintiff; and (g) the necessary information for any Class Member to find more information or examine the Court records should he or she desire to do so. *Id*. The deadline for objections and requests for exclusion is November 30, 2024. Thus far, no objections or exclusion requests have been received. Silverman Decl., ¶50.

In addition, Lead Counsel respectfully request reimbursement of $233,242.40 in expenses that it reasonably and necessarily incurred in prosecuting this litigation. *See* Silverman Decl., ¶¶65-66, 82-88. Finally, Plaintiff in this Action requests an award of $15,000 to compensate him for his time and service to the Class. Among other things, he spent substantial time researching the facts of the case, reviewing filings, producing documents, responding to interrogatories, preparing for deposition, and conferring with Lead Counsel about litigation strategy and settlement.

## II.    ARGUMENT

### A.    Lead Counsel are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The U.S. Supreme Court and Second Circuit both recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Manual for Complex Litigation (Fourth)* §14.121 (2004). "The court's authority to reimburse the representative parties … stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *10-11 (S.D.N.Y. May 9, 2014). In addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g., City of Providence*, 2014 WL 1883494, at *10-11; *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

The Supreme Court has repeatedly underscored that private securities actions, such as this one, provide "a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S.

4

299, 310 (1985). Thus, it "is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008). Moreover, the "[d]etermination of 'reasonableness' is within the discretion of the district court." *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *10 (S.D.N.Y. Oct. 26, 2004). Here, Lead Counsel's request for one-third (33 1/3%) of the Settlement Amount plus interest accrued thereon is eminently reasonable in light of the work provided and the result achieved.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

The Supreme Court has held that where counsel has created a common fund, an attorneys' fee is properly determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has likewise encouraged district courts to employ the percentage-of-the-fund method, although the lodestar method may also be used. *See Goldberger*, 209 F.3d at 47; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) (affirming district court's conclusion that the percentage method "aligns the interests of class counsel with those of the class"). In *Goldberger*, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."    209 F.3d at 48-49. Moreover, courts in this District have routinely used the percentage method to calculate attorneys' fees in common fund cases. *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *14 (recognizing that the percentage method "is the trend in this Circuit"); *Guevoura Fund Ltd.*, 2019 WL 6889901, at *15 (same).

5

The Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports using the percentage-of-recovery method: "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6).  Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage method in assessing fees for securities class actions.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007).

The percentage approach also has other advantages.  It best aligns the interests of counsel and the class, *see In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014), and  best serves "as a proxy for the market in setting counsel fees." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).  And here, where the Settlement Fund will consist of both cash and stock, the percentage approach alleviates the need to precisely value the stock component.  If the Court awards a one-third fee, then Lead Counsel will simply receive one-third of the cash and one-third of the stock in the Settlement Fund.  As demonstrated below, this request is fair and reasonable.

## C.    Relevant Factors Confirm that the Requested Fee Is Reasonable

The *Goldberger* factors the Second Circuit identified as relevant in assessing requests for attorneys' fees supported the fee request here.  These include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. These factors demonstrate that Counsel's requested one-third fee is fair and reasonable.

6

**1.   The Time and Labor Expended by Lead Counsel Support the Requested Fee**

Lead Counsel has expended a substantial amount of time and effort pursuing this litigation on behalf of the Class.  Since its inception over four years ago, Lead Counsel has devoted more than 2,631 hours to this litigation.[2]  Silverman Decl. ¶¶70-71.  At the pleadings stage, it thoroughly investigated the legal and factual bases for claims against Defendants.  This thorough investigation led Lead Counsel to expand the scope of claims in the Amended Complaint, adding a number of additional alleged misrepresentations made by Defendants and adding causes of action under Sections 10(b) and 20(a) (ECF 16, 29).  The Amended Complaint also added extensive detail to the initially-pled causes of action.  *Id.*

Lead Counsel also researched and prepared and successfully opposed Defendants' motion to dismiss.  It analyzed Defendants' omnibus motion to dismiss (ECF 33), thoroughly researched applicable case law, and drafted a compelling opposition explaining why dismissal would be inappropriate (ECF 32).  As a result of these arguments and the detailed allegations of the Amended Complaint, all core claims were sustained and only a few ancillary allegations were trimmed in the Court's September 30, 2022 Memorandum and Order.  ECF 35.

Lead Counsel promptly conferred with then-counsel for Defendants, which agreed that it would be beneficial to attempt settlement discussions before commencing discovery.  Silverman Decl., ¶27.  This was delayed for a short period of time after the Casper Defendants switched counsel.  *Id.*  Lead Counsel prepared a mediation statement and participated in a mediation on January 10, 2023, before Jed Melnick, Esq., an experienced mediator who has settled many securities fraud class actions. The January 2023 mediation did not resolve the Action.

When post-mediation negotiations failed to yield results, Lead Counsel immediately

---

[2] This figure does not include any time devoted to preparing this fee request.

commenced discovery and sought to zealously advance this case. It promptly exchanged initial document requests, served requests for production upon Defendants, and issued subpoenas to third parties. *Id.* at ¶26. Lead Counsel also negotiated a protective order and ESI protocol, and resolved several discovery disputes, mostly through informal conferences. In all, the document requests and subpoenas yielded over 258,000 pages of documents, which Lead Counsel reviewed to locate the documents supportive of (and contrary to) Plaintiff's claims. *Id.* Lead Counsel also negotiated a comprehensive litigation schedule with Defendants (ECF 58), and participated in multiple case management conferences. Lead Counsel also took or participated in the depositions of eleven (11) fact witnesses. *Id.*

To prepare for class certification, Lead Counsel thoroughly researched relevant caselaw and engaged a world-class expert to opine on market efficiency and classwide damage methodologies. *Id.* at ¶86. Thereafter, Lead Counsel prepared and served Plaintiff's motion for class certification. *Id.* at ¶28.

During class certification briefing, Lead Counsel discussed with Casper's counsel the prospects for a second mediation. *Id.* at ¶29. Lead Counsel then advanced the Class's interests at a second mediation session before Jed Melnick in April 2024, and in subsequent negotiations. *Id.* Ultimately, these negotiations yielded a favorable mediator's proposal that both sides accepted, resulting in the Settlement. *Id.*

Throughout the litigation, Lead Counsel's efforts focused on advancing the Action to bring about the most successful outcome for the Class, whether through settlement or trial, by the most efficient means possible. Lead Counsel's significant efforts support the requested fee award. *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *15.

8

## 2. The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the fee request. Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at \*5; *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV- 06728-CM-SDA, 2020 WL 4196468, at \*4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute").

As detailed in the Silverman Decl., this Action raised difficult questions concerning—among other things—Casper's logistics at the time of the IPO and during Covid, whether omnichannel retailing was cannibalizing Casper's core business, and whether Casper's business prospects were materially different than as presented in IPO documents or had simply deteriorated due to consumer purchase hesitation in the early stages of Covid. Prosecuting these claims required skill and perseverance. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at \*16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

## 3. The Risks of the Litigation Support the Requested Fee

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. Indeed, courts within the Second Circuit have long recognized that the risk of non-payment associated with a contingency arrangement is an important factor in determining an appropriate fee award. *See City of Providence*, 2014 WL 1883494, at \*14. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at \*3 (S.D.N.Y. May 14,

9

2004); *City of Providence*, 2014 WL 1883494, at \*14 (same).  Thus, it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 433; *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).  Here, Lead Counsel pursued claims on behalf of the Class for more than four years, with no guarantee of ever being compensated for the investment of time and money that the case would require.  In undertaking this responsibility, it dedicated substantial attorney and professional resources to the prosecution of the litigation.  Lead Counsel also advanced over $233,242 in out-of-pocket expenses with no guarantee that those expenses would ever be reimbursed.  Not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation.  The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

While Lead Counsel firmly believed in the strength of its case, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  "The difficulty of establishing liability is a common risk of securities litigation."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006).  As one court has noted, an "unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-

10

circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001). Indeed, the high rate of dismissals in securities class actions demonstrates the risks involved as compared to the prospects for success. Cornerstone reports that of securities class actions filed from 2015 through 2019, an average of 52.2% of cases have been dismissed.[3] And according to NERA, the rate of dismissal in securities class actions has steadily increased over time: in 2012, a little over one third of cases filed were dismissed, whereas in 2021 at over half of the cases filed were dismissed.[4] Plaintiff faced that considerable risk here.

Further, Defendants would have continued to argue that even if Plaintiff could establish a material misstatement or omission, there was no evidence upon which the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness—could be proven with respect to Plaintiff's Exchange Act claims. The scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g., Fishoff v. Coty Inc.*, No. 09 CIV. 628 (SAS), 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Here, Defendants were adamant that they had no intent to deceive.

Loss causation represented an even greater risk. Defendants had argued that the true cause of the decline was not the alleged misrepresentations, but the onset of Covid. At trial, this would

---

[3] Cornerstone Research, "Securities Class Action Filings, 2021 Year in Review," at p.18 figure 17 (of the cases filed in 2017 36% are settled, 8% are continuing and 2% were remanded).
[4] NERA Economic Consulting, Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review," January 25, 2022 at 11.

come down to "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 67-68 (S.D.N.Y. 2012) (noting that in a battle of the experts "victory is by no means assured" and the "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses").  Thus, even if Plaintiff prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

Even plaintiffs who succeed at trial may find their judgment overturned on appeal or on a post-trial motion.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law on the basis of loss causation following a jury verdict partially in plaintiffs' favor); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

Finally, even if Plaintiff proceeded to trial and achieved an award higher than the Settlement, there was a substantial risk that victory would be illusory and the award uncollectible. Accordingly, this factor demonstrates that the requested fee is reasonable and fair.

### 4.  The Settling Parties Were Represented by Experienced, High-Caliber Counsel

The achieved and the quality of the services provided are also important factors for courts to consider in determining reasonable attorneys' fees under a percentage-of-fund analysis.  *See*

12

*Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748-49 (S.D.N.Y. 1985). Here, despite the significant risk to recovery in this Action, Lead Counsel successfully obtained a highly-advantageous $3 million cash-and-stock-based settlement for the Class. This recovery represented **over 40%** of estimated maximum likely recoverable damages,[5] several times greater than is typically recovered in securities fraud class actions. *See*, *e.g.*, *Burns*, 2014 WL 12917621, at *5 (citing *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting that there has been an "average 5.5% - 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995," and concluding that these percentages are "well within the range of possible approval")); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses).

The experience of counsel is also relevant in determining fair compensation. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). As the firm resume demonstrates, Pomerantz LLP has extensive experience in the specialized field of securities litigation. *See* Silverman Decl., Exh. 3. Lead Counsel successfully leveraged this experience to successfully negotiate the Settlement.

The quality of opposing counsel also matters. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp.

---

[5] This percentage is based upon consultation with Plaintiff's damages expert, which assessed that the maximum aggregate Section 10(b) damages are $1.26 million, and maximum aggregate Section 11 damages after accounting for negative causation are $6.2 million. Silverman Decl., ¶76. As discussed above, Plaintiff and Lead Counsel believe it is almost certain that *some* negative causation would be established because Casper's peers also declined in the period in question, and industry declines were largely attributed to Covid. However, if Defendants failed to establish *any* negative causation, Plaintiff estimates that Section 11 damages could reach $50.2 million. Even then, the proposed recovery would represent 5.98% of those damages, still a favorable recovery.

at 749.  This litigation was vigorously contested by Defendants who were ably represented by very experienced and qualified attorneys from Kirkland & Ellis and Wilkie Farr & Gallagher. Silverman Decl., ¶75.  "[N]otwithstanding this formidable opposition, Lead Counsel was able to develop Lead Plaintiff's case so as to resolve the litigation on terms favorably to the Class."  *City of Providence*, 2014 WL 1883494, at *17.  The fact that Lead Counsel achieved a superior Settlement for the Class in the face of high-quality legal opposition further evidences the quality of its efforts.  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).

The positive reaction by Class Members confirms the quality of Lead Counsel's representation.  "Numerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010).  Although the Notice clearly indicated Lead Counsel would request this fee, to date no Class Member has objected.  Silverman Decl., ¶¶73, 88; *see also Rodriquez v. It's Just Lunch Int'l*, No. 07-CV-09227 (SN), 2020 WL 1030983, at *11 (S.D.N.Y. Mar. 2, 2020) (awarding the requested 31.5% in attorneys' fees over two objections, noting that "the relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable").  Thus, the Class reaction to date strongly supports the fee request.

### 5. The Requested Fee in Relation to the Settlement is Fair and Reasonable

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value."  *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010); *see also Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *2 (S.D.N.Y. Nov. 29, 2018).  Here, Lead

14

Counsel's fee request of one-third (33 1/3%) of the Settlement Fund is fair, reasonable and consistent with the range of percentages that courts in this Circuit have awarded in similar securities class action and other class action settlements of this size. *Supra* at 1-2; *see also Khait v. Whirlpool Corp.*, No. 06 CV 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding attorneys' fees equal to 33% of $3 million settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding 33.3% fee for the first $10 million of settlement, and noting it is "very common" to see 33% contingency fees in settlements less than $10 million); *Gay v. Tri-Wire Eng'g Solutions. Inc.*, No. 12 CV 2231, 2014 WL 28640, at *12 (E.D.N.Y. Jan. 2, 2014) (awarding 35.3% of $183,123.60 settlement fund where the total fees equaled a reasonable lodestar amount); *Mohney v. Shelly's Prime Steak. Stone Crab & Oysters Bar*, No. 06 CV 4270, 2009 WL 5851465, at *1, 5-6 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,625,000 settlement).[6]  Here, Lead Counsel's request is in line with awards in similar securities class action settlements, and should be granted.

### 6. Public Policy Considerations Favor the Fee Request

"Congress, the Executive Branch, and [the Supreme] Court … have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department

---

[6] *See also Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *6–7 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3% of a settlement fund as "well within the range accepted by courts in this circuit").

of Justice and the Securities and Exchange Commission." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)); *see also Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). To effectuate the investor protection purpose of the federal securities laws, courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[7]

Courts in this Circuit recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud class actions. *See Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices"); *In re WorldCom, Inc. Sec. Litig.*, 388 Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). Therefore, this factor also favors the requested fee.

**7. A Lodestar Cross-Check Confirms That the Requested Attorneys' Fees are Reasonable**

The requested fees are also consistent with fees charged in the marketplace for equivalent services, a consideration that the Supreme Court has identified as significant. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). Contingent fees in nonrepresentative actions typically range from thirty percent to forty percent of the gross recovery. *Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one third of whatever amount the plaintiff recovers. In those cases,

---

[7] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989); *Maley*, 186 F. Supp. 2d at 372-73; *Warner Commc'ns,* 618 F. Supp. at 750-51.

therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).  A RAND study of federal lawsuits found that, of the cases in which contingent fees were paid, the percentage was 33% over half the time, less than 33% about a quarter of the time, and more than 33% in the remainder.[8]

This Court may also consider as a cross-check whether the requested fee would result in a disproportionate multiplier to Lead Counsel's lodestar, or the aggregate value of the time expended if billed on an hourly basis.  *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *23-28 (S.D.N.Y. Oct. 25, 2006) (describing this second analysis); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002).  Here, a lodestar cross-check confirms the reasonableness of the requested fee.  As set forth in the Silverman Declaration, ¶¶69-71, Lead Counsel expended 2631.79 hours for a total lodestar of $1,864,972.00 in litigating this Action.[9] Thus, the requested fee of 33 1/3% of the $3,000,000 Settlement yields a ***negative*** lodestar multiplier of 0.54.  A negative multiplier is a "strong indication of the reasonableness of the [requested] fee." *In re Bear Stearns*, 909 F. Supp. 2d at 271.  Where the multiplier is negative, a lodestar cross-check "unquestionably supports the requested percentage fee award." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *20

---

[8] *See* Herbert M. Kritzer, *Seven Dogged Myths Concerning Contingency Fees*, 80 Wash. U. L.Q. 739, 760 (2002) (summarizing data reported in James S. Kakalik et al., An Evaluation of Judicial Case Management Under the Civil Justice Reform Act (1996)).

[9] These lodestar figures are based on hourly records created and maintained in the records of Pomerantz LLP in the ordinary course of business, and do not include any time related to the preparation of this fee request.  To arrive at the lodestar, the hours expended were multiplied by each attorney's respective hourly rate. *See Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999).  It is well-settled that the use of an attorney's current rate in place at the time of the fee application is proper, since such rates compensate for inflation, the loss of use of funds, and the delay in receiving payment. *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *Jenkins*, 491 U.S. at 283-84.

(S.D.N.Y. Dec. 23, 2009); *see also In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*16 (collecting cases) (a negative lodestar multiplier of 0.755 "is well below the parameters used throughout district courts in the Second Circuit, [and] affords additional evidence that the requested fee is reasonable."); *Guevoura Fund Ltd.*, 2019 WL 6889901, at \*18 (collecting cases) ("Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, the percentage fee would represent a negative multiplier of the lodestar."); *In re Sterling & Foster, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) ("the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum." ).

**D.      Lead Counsel Should Be Reimbursed for its Litigation Expenses**

Lead Counsel further request that the Court grant reimbursement of $233,242.40 in litigation expenses incurred in the prosecution of this Action.  Silverman Decl. ¶¶82-88.  "The Court may award counsel reasonable out-of-pocket expenses that were necessary to successfully litigate and resolve the action."  *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*17 (quoting *Burns*, 2014 WL 12917621, at \*11).   Indeed, courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by an hourly-billed client.  *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *MetLife*, 689 F. Supp. 2d at 363; *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at \*18 (S.D.N.Y. July 27, 2007).

The litigation expenses here were all necessary for the prosecution of this Action and all are of the type traditionally billed to clients paying hourly.  A large majority of the expenses were for experts, private investigators, and mediation – expenses that were essential to the successful result of the Action and that other courts have found to be "reasonably expended and should be

18

reimbursed." *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*17 (approving reimbursement of the plaintiff counsel's expenses, a majority of which were "for outside investigators, financial consultants, and the mediator"). Other out-of-pocket expenses were also reasonable, of the type traditionally billed, and should be reimbursed. *See Burns*, 2014 WL 12917621, at \*11 (approving the reimbursement of expenses for "online legal research, copying costs, postage, court filing fees, … private investigator, and mediation fees."). Moreover, the Notice indicated that Lead Counsel would seek reimbursement of up to $280,000 in litigation expenses and only one objection has been received. *See* ECF 57-2. The lack of objections underscores that the lesser amount requested here is reasonable and should be reimbursed. Bravata Decl. at ¶¶12-13; *Rodriquez*, 2020 WL 1030983, at \*11. Thus, the reimbursement of Lead Counsel's expenses is warranted.

### E. The Proposed Compensatory Award to Plaintiff is Reasonable

The PSLRA expressly permits Plaintiff to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class[]." 15 U.S.C. §78u-4(a)(4). "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011). In accordance with the PSLRA and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See Martinek v. Amtrust Fin. Servs., Inc.*, No. 19 CIV. 8030 (KPF), 2022 WL 16960903, at \*3 (S.D.N.Y. Nov. 16, 2022) (awarding $15,000); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at \*13 (S.D.N.Y. Nov. 30, 2021) (awarding $7,500); *Kindle*

19

*v. Dejana*, 308 F. Supp. 3d 698, 718 (E.D.N.Y. 2018) (collecting cases) (awarding $10,000); *Hicks*, 2005 WL 2757792, at *10 (collecting cases) (awarding $7,500).

Here, Plaintiff at all times zealously represented the Class. Among other things, he (a) analyzed whether to participate in the litigation; (b) reviewed complaints, motions, orders, and other case-related materials, and communicated with Lead Counsel about the same; (c) conferred extensively with Lead Counsel about case developments, both directly and through his personal attorney; (d) responded to discovery requests and consulted with Lead Counsel about such responses; (e) made his personal attorney available to assist with discovery and information requests; (f) prepared for deposition; , and (g) reviewed and authorized Settlement proposals. *See* Silverman Decl. at ¶¶84-87; Gahtan Decl., ¶¶1-3. Further, the award of $15,000 for more than fifty (50) hours of work is not only in line with, but less than, the compensation he generates in his profession as a securities trader. *See* Gahtan Decl., ¶4; Silverman Decl. ¶89.

Plaintiff and Lead Counsel submit that the relatively modest requested award of $15,000 to compensate the Plaintiff in this Action for his time and service to the Class is reasonable and should be granted.

## III. CONCLUSION

Lead Counsel's efforts have resulted in a very favorable result for the Class under the circumstances. Therefore, it respectfully requests that the Court (a) award attorneys' fees in the amount of 33 1/3% of the gross Settlement fund, plus accrued interest; (b) reimbursement of expenses to Lead Counsel in the amount of $233,242.40, plus accrued interest; and (c) grant an award to Plaintiff in the amount of $15,000.

Dated:  November 18, 2024                                  Respectfully submitted,

**POMERANTZ LLP**

20

*/s/ Joshua B. Silverman*
Joshua B. Silverman (admitted *pro hac vice*)
Christopher P.T. Tourek (admitted *pro hac vice*)
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
E-mail: jbsilverman@pomlaw.com
          ctourek@pomlaw.com

          -and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          ahood@pomlaw.com

*Lead Counsel*

21

## CERTIFICATE OF SERVICE

On November 18, 2024, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Joshua B. Silverman
Joshua B. Silverman

22